| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Leonard M. Shulman - Bar No. 126349<br>Melissa Davis Lowe - Bar No. 245521<br>SHULMAN BASTIAN FRIEDMAN & BUI LLP<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>Email:  LShulman@shulmanbastian.com<br>          MLowe@shulmanbastian.com<br><br>☐  *Individual appearing without attorney*<br>☒  *Attorney for:* Richard A. Marshack, Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>VILLA PARK MANSION LLC,<br><br><br><br>Debtor(s). | CASE NO.: 8:23-bk-12204-SC<br>CHAPTER: 7<br><br><br>**NOTICE OF SALE OF ESTATE PROPERTY** |
|---|---|

| Sale Date: 04/30/2024 | Time: 11:00 am |
|---|---|
| **Location:** U.S. Bankruptcy Court, Courtroom 5C, 411 West Fourth Street, Santa Ana, CA 92701 | |

**Type of Sale**: ☒ Public   ☐ Private        **Last date to file objections**: 04/16/2024

**Description of property to be sold**: Real property located at 18462 Villa Drive, Villa Park, California 92861 ⊞

See attached Sale Motion.

**Terms and conditions of sale**: See attached Sale Motion

**Proposed sale price**: $3,140,000.00

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Overbid procedure (*if any*)**: See attached Sale Motion for the Bidding Procedures

**If property is to be sold free and clear of liens or other interests, list date, time and location of hearing:**

April 30, 2024 at 11:00 a.m.

United States Bankruptcy Court

Courtroom 5C, 411 West Fourth Street

Santa Ana, CA 92701

[Appearance Via Zoom - accessibility information will be provided by the Court in ⊞
ruling prior to the hearing, and direct parties to obtain such accessibility information on
Judge Clarkson's posted hearing calendar which may be viewed online at:
http://ecf.ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC

**Contact person for potential bidders (*include name, address, telephone, fax and/or email address*):**

Melissa Davis Lowe, Esq.

Shulman Bastian Friedman & Bui LLP

100 Spectrum Center Drive, Suite 600

Irvine, California 92618

Telephone: (949) 340-3400

Facsimile: (949) 340-3000

Email: MLowe@shulmanbastian.com

Date: 04/09/2024

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                  Page 2                          **F 6004-2.NOTICE.SALE**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Leonard M. Shulman - Bar No. 126349<br>Melissa Davis Lowe - Bar No. 245521<br>SHULMAN BASTIAN FRIEDMAN & BUI LLP<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>Email:  LShulman@shulmanbastian.com<br>        MLowe@shulmanbastian.com<br><br>☐  *Individual appearing without attorney*<br>☒  *Attorney for:*  Richard A. Marshack, Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>VILLA PARK MANSION LLC,<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 8:23-bk-12204-SC<br><br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION FOR:**<br><br>ORDER: (1) APPROVING THE SALE OF REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS PURSUANT TO BANKRUPTCY CODE §§ 363(b)(1) and (f), SUBJECT TO OVERBIDS, ETC.<br>(*Specify name of Motion*) |
| | DATE: 04/30/2024<br>TIME:  11:00 am<br>COURTROOM: 5C [Appearance via Zoom] **<br>PLACE: 411 West Fourth Street<br>         Santa Ana, CA 92701 |

1.  TO (*specify name*):  US Trustee, the Debtor and the parties listed on the attached proof of service

2.  NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3.  **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)
    **accessibility information will be provided by the Court in its tentative ruling prior to the hearing, and direct parties to obtain such accessibility information on Judge Clarkson's posted hearing calendar which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5.  **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:   04/09/2024                              SHULMAN BASTIAN FRIEDMAN & BUI LLP
                                                Printed name of law firm


                                                /s/ Melissa Davis Lowe
                                                Signature


                                                Melissa Davis Lowe
                                                Printed name of attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 2                    **F 9013-1.1.HEARING.NOTICE**

1  Leonard M. Shulman – Bar No. 126349
   Melissa Davis Lowe – Bar No. 245521
2  **SHULMAN BASTIAN FRIEDMAN & BUI LLP**
   100 Spectrum Center Drive, Suite 600
3  Irvine, California 92618
   Telephone:      (949) 340-3400
4  Facsimile:      (949) 340-3000
   Email:          LShulman@shulmanbastian.com;
5                  MLowe@shulmanbastian.com

6  Attorneys for Richard A. Marshack,
   Chapter 7 Trustee
7

8              **UNITED STATES BANKRUPTCY COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10

11  In re                                    Case No.  8:23-bk-12204-SC

12  **VILLA PARK MANSION LLC,**              Chapter 7

13  Debtor.                                  **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:**

14                                           **(1) APPROVING THE SALE OF REAL
                                                 PROPERTY OF THE ESTATE FREE AND
15                                               CLEAR OF LIENS PURSUANT TO
                                                 BANKRUPTCY CODE §§ 363(b)(1) and (f),
16                                               SUBJECT TO OVERBIDS, COMBINED WITH
                                                 NOTICE OF BIDDING PROCEDURES AND
17                                               REQUEST FOR APPROVAL OF THE
                                                 BIDDING PROCEDURES UTILIZED;**

18                                           **(2) APPROVING PAYMENT OF REAL ESTATE
                                                 COMMISSION AND OTHER COSTS; AND**

19                                           **(3) GRANTING RELATED RELIEF;**

20                                           **MEMORANDUM OF POINTS AND AUTHORITIES;
                                             DECLARATION OF RICHARD A. MARSHACK
21                                           AND CLARENCE YOSHIKANE IN SUPPORT**

22                                           **[Real property located at 18462 Villa Drive, Villa
                                             Park, CA 92861]**

23

24                                           **Hearing Date:**
                                             Date:   April 30, 2024
25                                           Time: 11:00 a.m.
                                             Place: Courtroom 5C
26                                                  United States Bankruptcy Court
                                                    411 W. Fourth Street
27                                                  Santa Ana, CA 92701

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1

6839-000 Sale Motion TC Villa Park

# <u>TABLE OF CONTENTS</u>

**Page**

I.    SUMMARY OF ARGUMENT AND RELIEF REQUESTED ............................................6

II.   BACKGROUND.............................................................................................................7

    A.    The Bankruptcy Case and Claims Filed ................................................................7

    B.    The Property .........................................................................................................8

    C.    Broker Employment, Marketing Efforts and Basis for Value of the Property...........8

    D.    Costs Advanced for the Property ..........................................................................9

    E.    Sale Information in Compliance with LBR 6004-1(c)(3). .....................................10

    F.    Terms of Sale .....................................................................................................12

    G.    Treatment of Liens and Encumbrances Through the Sale ....................................13

    H.    Approval of the Bidding Procedures ...................................................................16

    I.    Costs of the Sale .................................................................................................18

    J.    Tax Consequences .............................................................................................18

III.  ARGUMENT ................................................................................................................18

    A.    There is a Good Business Reason for the Sale and the Sale is in the Best
        Interest of the Estate. ..........................................................................................18

    B.    The Proposed Sale Should be Allowed Free and Clear of Liens ............................19

        1.    Bankruptcy Code § 363(f)(2) – Consent ....................................................20

        2.    Bankruptcy Code § 363(f)(3) – Price Greater than Value ...........................20

        3.    Bankruptcy Code § 363(f)(4) – Bona Fide Dispute ...................................20

    C.    Request for Payment of Real Estate Commission to Broker .................................22

    D.    The Court Has the Authority to Approve the Bidding Procedures. .........................23

    E.    The Court Has the Authority to Waive the Fourteen-Day Stay of Sale.................23

    F.    The Court Has the Authority to Find That the Buyer is a Good Faith
        Purchaser. ...........................................................................................................23

IV.   CONCLUSION ............................................................................................................24

DECLARATION OF RICHARD A. MARSHACK.......................................................26

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

2

6839-000 Sale Motion TC Villa Park

1

DECLARATION OF CLARENCE YOSHIKANE ..................................................................30

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6839-000 Sale Motion TC Villa Park

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Atwood*,
    124 B.R. 402 (Bankr. S.D. Ga. 1991) ................................................................. 21

*In re Ewell*,
    958 F.2d 276 (9th Cir. 1992) ............................................................................... 23

*In re Lionel Corp.*,
    722 F.2d 1063 (2d Cir. 1983) ............................................................................. 19

*In re Milford Group, Inc.*,
    150 B.R. 904 (Bankr. M.D. Pa. 1992) ................................................................ 21

*In re Schwartz*,
    951 Fed.2d, 596 (9th Cir. 1992) ................................................................... 11, 20

*In re Wilde Horse Enterprises, Inc.*,
    136 B.R. 830 (Bankr. C.D. Cal. 1991) ............................................................... 19


## STATUTES

(f)(4)   16

11 U.S.C. § 363(b) ..................................................................................................... 19

11 U.S.C. § 105(a) ..................................................................................................... 23

11 U.S.C. § 328(a) ..................................................................................................... 22

11 U.S.C. § 362 .............................................................................................. 11, 16, 20

11 U.S.C. § 363(b)(1) .......................................................................... 14, 15, 16, 23

11 U.S.C. § 363(f) ............................................................................................ 19, 20, 22

11 U.S.C. § 363(f)(2) ................................................................................................. 20

11 U.S.C. § 363(f)(3) ................................................................................................. 20

11 U.S.C. § 363(f)(4) ........................................................................................ passim

11 U.S.C. § 363(m) .................................................................................................... 23

11 U.S.C. § 548 ......................................................................................................... 21

11 U.S.C. § 549 .............................................................................................. 11, 16, 20

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

11 U.S.C. § 704 ................................................................................................ 18

11 U.S.C. § 704(a) ........................................................................................... 18

**RULES**

Federal Rule of Bankruptcy Procedure 6004(h) ........................................ 23, 24

Local Bankruptcy Rule 6004-1(c)(2)(C) ......................................................... 18

Local Bankruptcy Rule 6004-1(c)(3) ............................................................. 10

Local Bankruptcy Rule 6004-1(c)(3)(A) ......................................................... 10

Local Bankruptcy Rule 6004-1(c)(3)(B) ......................................................... 10

Local Bankruptcy Rule 6004-1(c)(3)(C) ......................................................... 10

Local Bankruptcy Rule 6004-1(c)(3)(D) ......................................................... 10

Local Bankruptcy Rule 6004-1(c)(3)(E) ......................................................... 11

Local Bankruptcy Rule 6004-1(c)(3)(F) ......................................................... 11

Local Bankruptcy Rule 6004-1(c)(3)(G) ......................................................... 12

Local Bankruptcy Rule 6004-1(c)(3)(H) ......................................................... 12

Local Bankruptcy Rule 6004-1(c)(3)(I) .......................................................... 12

Local Bankruptcy Rule 6004-1(c)(3)(J) .......................................................... 12

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6839-000 Sale Motion TC Villa Park

1  **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2  **JUDGE, THE DEBTOR AND ITS COUNSEL, THE OFFICE OF THE UNITED STATES**

3  **TRUSTEE, CREDITORS AND OTHER PARTIES-IN-INTEREST:**

4      Richard A. Marshack ("Trustee"), solely in his capacity as the Chapter 7 trustee for the

5  bankruptcy estate ("Estate") of Villa Park Mansion LLC ("Debtor"), brings this Motion for Order:

6  (1) Approving the Sale of Real Property of the Estate Free and Clear of Liens Pursuant to

7  Bankruptcy Code §§ 363(b)(1) and (f), Subject to Overbids, Combined With Notice of Bidding

8  Procedures and Request for Approval of the Bidding Procedures Utilized; (2) Approving Payment

9  of Real Estate Commission and Other Costs; and (3) Granting Related Relief ("Sale Motion"), and

10  respectfully represents as follows:

11  **I.      SUMMARY OF ARGUMENT AND RELIEF REQUESTED**

12      Through his broker, the Trustee has received an offer from Hao Bui and Thuy Nguyen

13  (collectively, the "Buyer") to purchase the real property located at 18462 Villa Drive, Villa Park,

14  California 92861 (the "Property") for $3,410,000.00, subject to overbids.  Through the sale,

15  including certain agreed upon carveouts, the Trustee is expected to pay unsecured creditors in full.

16  In the event the purchase price is increased by a successful overbid, the estimated net proceeds may

17  increase.

18      The Trustee seeks to sell the Property free and clear of any and all disputed liens,

19  encumbrances, claims and/or interests (collectively, the "Liens and Encumbrances") impacting the

20  Property, with all such Liens and Encumbrances upon the Property to be unconditionally released,

21  discharged and terminated, and with any Liens and Encumbrances not resolved or satisfied through

22  the sale to attach only to the proceeds of the transaction with the same priority, validity, force and

23  effect as they existed with respect to the Property before the closing of the sale pending further Court

24  order or agreement with the parties.  The Trustee does not believe it is prudent or necessary to

25  resolve the disputes with holders of any disputed Liens and Encumbrances by Court order or

26  judgment prior to the sale.  The unresolved disputed Liens and Encumbrances, if any, would be

27  subject to a bona fide dispute and the Bankruptcy Code provides for a means to sell free and clear

28  of such interests.  If the Estate is forced to wait for resolution of the disputes, if any, the Trustee

SHULMAN BASTIAN
FRIEDMAN & BUI  LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6

6839-000 Sale Motion TC Villa Park

1  may lose the opportunity to capitalize on the current interest from the Buyer and the Estate will have

2  to expend further funds to list and market the Property for sale, which will dilute the amount of

3  funds available for the Estate.

4          As such, the sale should proceed now, with any claims or interests of disputed Liens and

5  Encumbrances, if any, to attach to the proceeds.  In this case, more than any other, where the asset

6  is real estate that is subject to fluctuations in the current real estate market, interest rates and other

7  factors that may significantly impact its value, it is absolutely essential for the Trustee to be able to

8  quickly liquidate the Estate's interest in the Property for its maximum possible value.  Resolution

9  of the issues with regard to the claims of the holders of the disputed Liens and Encumbrances may

10 likely take substantial time, effort and expense by the parties.  That process should not hinder, delay

11 or in any way inhibit the Trustee's efforts to maximize the value of the sale of the Property.  Thus,

12 the Trustee believes that approval of the sale of the Property free and clear of Liens and

13 Encumbrances pursuant to Bankruptcy Code Section 363(f)(2) and/or 363(f)(4) in the manner

14 provided herein is appropriate.

15         In summary, the Trustee believes that good cause exists to grant the Sale Motion so the

16 Trustee does not lose this valuable business opportunity.

17                    **II.    BACKGROUND**

18 **A.    The Bankruptcy Case and Claims Filed**

19         The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October

20 25, 2023 ("Petition Date").  Richard A. Marshack is the duly appointed, qualifying, and acting

21 Chapter 7 trustee for the Estate.

22         The deadline to file claims in this case was February 20, 2024.  The Court's claims register

23 indicates that there have been five claims filed totaling $3,485,802.79. Of those, $3,485,002.79 are

24 secured claims, which either will not be entitled to a dividend from the Estate or will be resolved

25 through escrow on the sale of the Property.[1] One unsecured priority claim has been filed by the

26 California Franchise Tax Board, Claim 1, in the amount of $800.00.

27 _____

28 [1] Secured claims include: Claim 2 filed by PDA Inc. in the amount of $235,907.76 allegedly secured by the Property
but no evidence of perfection of a security interest was provided; Claim 3 filed by Camanna, LLC in the amount of

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

7

6839-000 Sale Motion TC Villa Park

**B.      The Property**

Attached as **Exhibit 1** to the Declaration of Richard A. Marshack ("Marshack Declaration") are true and copies of the Debtor's Petition and Schedules A/B and D.  On its Schedule A/B, the Debtor listed an ownership interest in the Property and valued the Property at $4,500,000.00.  On its Schedule D, the Debtor listed the following liens encumbering the Property: (1) Camanna LLC in the amount of $2,012,500.00; (2) PDA Inc. in the amount of $216,000.00; and (3) Green Lotus Group LLC in the amount of $736,800.00 and $210,500.00 (collectively the "Secured Creditors"), for a total of $3,175,800.00.  The Debtor's Schedule D listed the claims of the Secured Creditors as disputed.

From a review of real property records, the Trustee is informed that the loan by Camanna LLC is in default and that a notice of sale was recorded on September 29, 2023 and a sale was scheduled for October 27, 2023.

Attached as **Exhibit 2** to the Marshack Declaration is a true and copy of a Preliminary Report for the Property dated February 16, 2024 ("Title Report") which details how title is vested for the Property and the liens encumbering the Property.

**C.      Broker Employment, Marketing Efforts and Basis for Value of the Property.**

Upon the Trustee's application filed on February 22, 2024 [docket 27] and pursuant to Court order entered on March 15, 2024 [docket 31], the Trustee was authorized to employ Clarence Yoshikane of Berkshire Hathaway HomeServices California Properties as his broker ("Broker") to assist the Trustee with the marketing of the Property for sale.  The listing agreement with the Broker provides for a real estate commission in an amount equal to six percent (6%) of the purchase price, with a two percent (2%) carve-out of such commission for the benefit of the Estate. Thus, subject to Court approval of this Sale Motion, the real estate broker commission for the sale of the Property shall not exceed six percent (6%) of the purchase price for the Property, to be split as follows: two percent (2%) to Buyer's agent, two percent (2%) to the Broker, and two percent (2%) carved out and assigned to the Estate ("Broker Carve-Out").

---

$2,230,699.14 secured by the Property; Claim 4 filed by Green Lotus Group, LLC in the amount of $818,395.89 secured by the Property and Claim 5 filed by Green Lotus Group, LLC in the amount of $200,000.00 secured by the Property.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

8

6839-000 Sale Motion TC Villa Park

Based on a preliminary analysis and communication with the Broker, he believed the Property had a fair market value that supported a listing price of $3,599,900.00.  The listing price was determined on comparable sales of similar properties in the area and the condition of the Property.

The Broker has marketed the Property across multiple channels for about two months.  The Broker prepared a comprehensive marketing package and contacted potential buyers by telephone, email, and hard mail, in addition to listing the Property on the MLS and multiple websites.  Since the Property was listed, there have been 11 agent calls and approximately 3 buyer calls.  The Property has been shown 12 times.

The offer from the Buyer is the result of negotiations for the highest and best offer.  The Buyer has also released all contingencies before closing escrow and accepting title to and possession of the Property.

The Estate does not have the funds to obtain a formal written appraisal for the estimated value of the Property.  The Broker is experienced in the sale of real property as well as property valuations and is familiar with valuing real property in today's economic environment.

The Trustee believes that the proposed sale, subject to overbids, will be at fair market value because the market itself, not hypothetical appraisals of the market, are the best determinant of value.  Given that the sale is subject to overbids, it is anticipated the Trustee will receive the best and highest value for the Property and the proposed sale price is fair and reasonable.

**D.**    **Costs Advanced for the Property**

The Trustee requests approval to use proceeds of the sale to reimburse the Broker an amount not to exceed $12,000.00 ("Advanced Costs") for the expenses the Broker incurred to preserve, maintain and secure the Property so that it could be marketed for sale at the highest possible price.  Specifically, the Broker has paid or will pay (through closing on the sale of the Property): approximately $1,200.00 for a mobile locksmith, approximately $200.00 per month for pool service (plus a one-time clean-up of $325.00), approximately $3,000.00 for trash removal, and approximately $600.00 per month for utilities (water, gas and electric).  Reimbursement to the Broker for the Advanced Costs will be at the Trustee's discretion upon presentation of invoices.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

9

6839-000 Sale Motion TC Villa Park

In addition to the Advanced Costs, the Trustee was required to procure a general liability insurance policy through Trustee Insurance Agency, Inc. by Intac Advisory. The Trustee currently owes $2,876.72 to Intac Advisory for the insurance premium and finance charges. Through this Sale Motion, the Trustee requests Court approval to pay Intac Advisory the outstanding amount due which is $2,876.72.

**E.    Sale Information in Compliance with LBR 6004-1(c)(3).**

The following chart provides information on the sale in compliance with Local Bankruptcy Rule ("LBR") 6004-1(c)(3):

| LBR 6004-1(c)(3) Requirement | Information |
|---|---|
| LBR 6004-1(c)(3)(A)<br>Date, Time, and Place of hearing on the proposed sale: | Hearing Date and Time: April 30, 2024 at 11:00 a.m.<br>Hearing Place: U.S. Bankruptcy Court, Courtroom 5C, 411 W. Fourth Street, Santa Ana, CA 92701 |
| LBR 6004-1(c)(3)(B)<br>Name and address of the proposed buyer: | Hao Bui and Thuy Nguyen<br>6404 Blue Tee Court<br>Bakersfield, CA 93312 |
| LBR 6004-1(c)(3)(C)<br>Description of the property to be sold: | Real property located at: 18462 Villa Drive, Villa Park, CA 92861 |
| LBR 6004-1(c)(3)(D)<br>Terms and conditions of the proposed sale, including the price and all contingencies: | Buyer has offered $3,410,000.00, subject to the Bidding Procedures. Buyer is paying all cash and is purchasing the Property "AS IS", "WHERE-IS", with no expressed or implied representations or warranties, being given by the Trustee, concerning the condition of the Property or the quality of the title thereto, or any other matters relating to the Property. |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

10

6839-000 Sale Motion TC Villa Park

| **LBR 6004-1(c)(3) Requirement** | **Information** |
|---|---|
| LBR 6004-1(c)(3)(E)<br>Whether the proposed sale is free and clear of liens, claims or interests, or subject to them, and a description of all such liens, claims or interests: | Liens impacting the Property are identified in the Title Report attached as **Exhibit 2** to the Marshack Declaration. Pro-rata unpaid real property taxes will be paid. The lien of Camanna LLC (approximately $2,429,526.26) will be paid in full as agreed to between the Trustee and Camanna LLC.<br><br>As discussed herein, the sale of the Property will be free and clear of the disputed Liens and Encumbrances.<br><br>With respect to the Tran DOT, the Trustee believes that the Tran DOT was recorded in violation of the automatic stay under Bankruptcy Code § 362, and therefore, under applicable federal bankruptcy law, the Tran DOT is invalid as any action taken in violation of the automatic stay is void as a matter of law. [*See, In re Schwartz*, 951 Fed.2d, 596 (9th Cir. 1992)]. Further, the Trustee believes that there are causes of action under Bankruptcy Code § 549 to have the Tran DOT set aside in that it was recorded after the Petition Date, and was not authorized by the Bankruptcy Code nor order of the Bankruptcy Court.<br><br>With respect to the PDA Lien, the Trustee believes PDA Inc. will agree to a reduced payout but if it does not, the Trustee will pay the PDA Lien in full.<br><br>With respect to the Green Lotus 1st Lien and the Green Lotus 2nd Lien, the validity and amount of these liens are disputed by the Trustee. The Trustee has communicated with the lienholder's counsel and believes that the lienholder will agree to accept a reduced amount on account of its lien prior to the hearing on the Sale Motion. In the event an agreement is reached, the Trustee will supplement this Sale Motion to provide the pertinent information. To the extent there are disputed unresolved Liens and Encumbrances, such unresolved Liens and Encumbrances will attach to the proceeds of the sale in the same validity and priority as prior to the sale, pending agreement with the lienholder or further Court order. |
| LBR 6004-1(c)(3)(F)<br>Whether the proposed sale is subject to higher and better bids: | The sale of the Property is subject to the Bidding Procedures set forth in the Sale Motion below. |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

11

6839-000 Sale Motion TC Villa Park

| LBR 6004-1(c)(3) Requirement | Information |
|---|---|
| LBR 6004-1(c)(3)(G)<br>Consideration to be received by the Estate, including estimated commissions, fees and other costs of sale: | Purchase price of $3,410,000.00, or an amount as increased by successful overbid. All costs of sale, including escrow fees and real estate commissions will be paid at closing and are estimated to total approximately $238,700.00. The Estate and the Buyer will each pay their own escrow fees as is customary in the County where the Property is located. The Estate will receive the Broker Carve-Out. In addition, from the sale proceeds, the Trustee will pay delinquent and pro-rated property taxes, $2,876.72 to Intac Advisory, and the Advanced Costs estimated to be approximately $12,000.00. The sale price and costs of sale are subject to Bankruptcy Court approval. |
| LBR 6004-1(c)(3)(H)<br>If authorization if sought to pay commission, the identity of the auctioneer, broker, or sales agent and the amount or percentage of the proposed commission to be paid: | The real estate broker commission shall not exceed six percent (6%) of the purchase price, to be split as follows: two percent (2%) to Buyer's broker, Ana Real Estate/Tien Hung Nguyen, agent, two percent (2%) to the Broker, and two percent (2%) carved out and assigned to the Estate (approximately $68,000.00).<br><br>In addition, the Trustee's Broker will be reimbursed for his costs advanced to preserve, maintain and secure the Property so that it could be marketed for sale at the highest possible price (estimated reimbursement not to exceed $12,000.00). |
| LBR 6004-1(c)(3)(I)<br>A description of the estimated or possible tax consequences to the Estate, if known, and how any tax liability generated by the sale of the property will be paid: | The Property was only purchased by the Debtor approximately one (1) year prior to the Petition Date. Given the high tax basis in the Property, the Trustee expects there will be little to no taxes owed. In the event that there is any tax liability generated from the sale of the Estate's interest in the Property that is a liability of the Estate, it is anticipated that such taxes will be minimal and will be paid from the proceeds of the sale. |
| LBR 6004-1(c)(3)(J)<br>Date which objection must be filed and served: | **Objections, if any, must be filed and served 14 days prior to the Hearing Date (or by April 16, 2024).** |

**F.      Terms of Sale**

The Buyer has offered to purchase the Property for $3,410,000.00, subject to overbids. Attached as **Exhibit 3** to the Marshack Declaration is a true and correct copy of the Residential Purchase Agreement and Joint Escrow Instructions and related addendums (collectively the "Agreement"). Through the Sale Motion, the Trustee seeks a Court order authorizing the sale of the Property free and clear of liens, on an "as-is, where-is" condition with no representations or warranties, and subject to overbids.

SHULMAN BASTIAN
FRIEDMAN & BUI  LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

12

6839-000 Sale Motion TC Villa Park

## G.   Treatment of Liens and Encumbrances Through the Sale

All costs of sale, including escrow fees and real estate commissions will be paid at closing. In addition, the following chart sets forth the liens and encumbrances against the Property as detailed in the Title Report and the proposed treatment of such liens and encumbrances through the sale:

| Creditor | Description | Estimated Amount Owing | Treatment of Lien Through the Sale |
|---|---|---|---|
| Orange County Tax Collector | Real property taxes<br><br>1) Defaulted taxes for 2022-2023 in the amount of $19,371.40 (amount to redeem by April 30, 2024)<br><br>2) Unpaid first installment of taxes for 2023-2024 in the amount of $15,762.22, plus penalty of $1,576.22<br><br>3) Second installment of taxes for 2023-2024 is due on April 10, 2024 in the amount of $15,762.22 | $52,472.06 | All outstanding and pro-rata real property taxes will be paid through escrow on the sale transaction. |
| Camanna LLC | First priority deed of trust recorded 12/8/2021, Instrument No. 2021-761010 ("Camanna DOT") | $2,429,526.26 as of 4/4/2024.  Payoff received after that date will be subject to additional interest of $1,016.36 per day. | The Camanna DOT will be paid and will be released at the close of escrow.  This lien will **not** attach to the sale proceeds. |
| PDA Inc. | Second priority deed of trust recorded 12/19/2022, Instrument No. 2022-412088 and re-recorded on 2/16/2023, Instrument No. 2023-35870 ("PDA Lien") | $235,907.76, plus interest at the rate of 13.99%<br><br>[Per Proof of Claim filed 2/15/2024, Claim 2] | The validity and amount of the PDA Lien is disputed by the Trustee.<br><br>The Trustee has communicated with counsel for PDA Inc. and believes that the lienholder will agree to accept a reduced amount on accounts of its lien prior to the hearing on the Sale Motion.  In the event an agreement is reached, the Trustee will pay the PDA Lien in full. |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6839-000 Sale Motion TC Villa Park

| Creditor | Description | Estimated Amount Owing | Treatment of Lien Through the Sale |
|---|---|---|---|
| Green Lotus Group, LLC | Third priority deed of trust recorded 10/26/2022, Instrument No. 2022-345783 ("Green Lotus 1st Lien") | $200,000.00 (principal)<br><br>[Per Proof of Claim filed 2/20/2024, Claim 5] | The validity and amount of the Green Lotus 1st Lien is disputed by the Trustee.<br><br>The Trustee has communicated with counsel for Green Lotus Group, LLC and believes that the lienholder will agree to accept a reduced amount on accounts of its lien prior to the hearing on the Sale Motion.  In the event an agreement is reached, the Trustee will supplement this Sale Motion to provide the pertinent information. In the event an agreement is not reached, the Trustee asserts that the Green Lotus 1st Lien is subject to a bona fide dispute pursuant to Bankruptcy Code §§ 363(b)(1) and (f)(4), and seeks to sell the Property free and clear of this lien, with the unresolved disputed lien to attach to the proceeds of the sale in the same validity and priority as prior to the sale pending agreement with the lienholder or further Court order. |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

14

6839-000 Sale Motion TC Villa Park

| Creditor | Description | Estimated Amount Owing | Treatment of Lien Through the Sale |
|---|---|---|---|
| Green Lotus Group, LLC | Fourth priority deed of trust recorded 7/7/2022, Instrument No. 2022-239097 ("Green Lotus 2nd Lien") | $818,395.89, plus interest at the rate of 12% [Per Proof of Claim filed 2/20/2024, Claim 4] | The validity and amount of the Green Lotus 2nd Lien is disputed by the Trustee. The Trustee has communicated with counsel for Green Lotus Group, LLC and believes that the lienholder will agree to accept a reduced amount on accounts of its lien prior to the hearing on the Sale Motion.  In the event an agreement is reached, the Trustee will supplement this Sale Motion to provide the pertinent information. In the event an agreement is not reached, the Trustee asserts that the Green Lotus 2nd Lien is subject to a bona fide dispute pursuant to Bankruptcy Code §§ 363(b)(1) and (f)(4), and seeks to sell the Property free and clear of this lien, with the unresolved disputed lien to attach to the proceeds of the sale in the same validity and priority as prior to the sale pending agreement with the lienholder or further Court order. |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

15

6839-000 Sale Motion TC Villa Park

| Creditor | Description | Estimated Amount Owing | Treatment of Lien Through the Sale |
|---|---|---|---|
| Thanh Binh Tran | Fifth priority deed of trust recorded 12/31/2023, Instrument No. 2023-265666 ("Tran DOT") | $450,000.00 | The Tran DOT is subject to a bona fide dispute.<br><br>The Tran DOT was recorded *after* the Petition Date in violation of the automatic stay under Bankruptcy Code § 362. Further, the Trustee believes that there are causes of action under Bankruptcy Code § 549 to have lien set aside due to it be being recorded after the Petition Date.<br><br>As the Tran DOT is subject to a bona fide dispute pursuant to Bankruptcy Code §§ 363(b)(1) and (f)(4), the Trustee seeks to sell the Property free and clear of the Tran DOT with such disputed lien to attach to the proceeds of the sale in the same validity and priority as prior to the sale pending agreement with the lienholder or further Court order. |

## H.    Approval of the Bidding Procedures

The Trustee has determined that it would benefit the Estate to permit all interested parties to receive information and bid for the Property instead of selling the Property to the Buyer on an exclusive basis. Accordingly, in order to obtain the highest and best offer for the benefit of the creditors of this Estate, the Trustee is utilizing and also seeks Court approval of the following bidding procedures ("Bidding Procedures"):

1.    Potential bidders must bid an initial amount of at least $10,000.00 over the Purchase Price, or $3,420,000.00. Minimum bid increments thereafter shall be $5,000.00. The Trustee shall have sole discretion in determining which overbid is the best for the Estate and will seek approval from the Court of the same.

2.    Bids must be in writing and be received by the Trustee or his counsel, Melissa Davis Lowe, on or before **5:00 p.m. (California time) on April 23, 2024 (seven days prior to the hearing on this Sale Motion).** Bids must be accompanied by certified funds in an amount equal to three percent (3%) of the overbid purchase price.

3.    The bidder must also provide evidence of having sufficient specifically committed funds to complete the transaction or a lending commitment for the bid amount and such other

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

16

6839-000 Sale Motion TC Villa Park

documentation relevant to the bidder's ability to qualify as the purchaser of Property and ability to close the sale and immediately and unconditionally pay the winning bid purchase price at closing.

4.      The bidder must seek to acquire the Property on terms and conditions not less favorable to the Estate than the terms and conditions to which the Buyer has agreed to purchase the Property as set forth in the Agreement with the Buyer including no contingencies and closing on the sale in the same time parameters as the Buyer.

5.      All competing bids must acknowledge that the Property is being sold on an "AS IS" basis without warranties of any kind, expressed or implied, being given by the Seller, concerning the condition of the Property or the quality of the title thereto, or any other matters relating to the Property.   The competing bid buyer must represent and warrant that he/she is purchasing the Property as a result of their own investigations and are not buying the Property pursuant to any representation made by any broker, agent, accountant, attorney or employee acting at the direction, or on the behalf of the Seller.   The competing bidder must acknowledge that he/she has inspected the Property, and upon closing of Escrow governed by the Agreement, the Buyer forever waives, for himself/herself, their heirs, successors and assigns, all claims against the Debtor, its attorneys, agents and employees, the Debtor's Estate, Richard A. Marshack as Trustee and individually, and the Trustee's counsel, Shulman Bastian Friedman & Bui LLP, their agents and employees, arising or which might otherwise arise in the future concerning the Property.

6.      If overbids are received, the final bidding round shall be held at the hearing on the Sale Motion (**April 30, 2024 at 11:00 a.m., California Time, at the U.S. Bankruptcy Court, Courtroom 5C, 411 W. Fourth Street, Santa Ana, California 92701**), or if rescheduled, upon telephonic notice to the Buyer and the parties having submitted overbids in order to allow all potential bidders the opportunity to overbid and purchase the Property.   At the final bidding round, the Trustee in the exercise of her business judgment and subject to Court approval, accept the bidder who has made the highest and best offer to purchase the Property, consistent with the Bidding Procedures ("Successful Bidder").

7.      At the hearing on the Sale Motion, the Trustee will seek entry of an order, *inter alia*, authorizing and approving the sale of the Property to the Successful Bidder.   The hearing on the Sale Motion may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the hearing on the Sale Motion.

8.      In the event the Successful Bidder fails to close on the sale of the Property within the time parameters approved by the Court, the Trustee shall retain the Successful Bidder's Deposit and will be released from the obligation to sell the Property to the Successful Bidder and the Trustee may then sell the Property to the First Back-Up Bidder approved by the Court.

9.      In the event First Back-Up Bidder fails to close on the sale of the Property within the time parameters approved by the Court, the Trustee shall retain the First Back-Up Bidder's Deposit and will be released from the obligation to sell the Property to the First Back-Up Bidder and the Trustee may then sell the Property to the Second Back-Up Bidder approved by the Court.

The Bidding Procedures will be provided to all creditors and any potential bidders or parties who have shown an interest in the Property.  A Notice of Sale of Estate Property will be filed with the Court for posting on the Court's website under the link "Current Notices of Sales", which affords notice to additional potential interested parties.  The Broker will update the Multiple Listing Service

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

17

6839-000 Sale Motion TC Villa Park

to reflect the Bidding Procedures.  Based on this, the Trustee believes that under the circumstances of this case, the Property will have been appropriately marketed for bidding.

**I.**    **Costs of the Sale**

Subject to Court approval, the Trustee seeks authorization to pay a real estate broker commission in the amount of $204,600.00[2] to be split as follows:

| | |
|---|---|
| Trustee's Broker | 2% (or $68,200.00) |
| Buyer's Broker,  Ana Real Estate | 2% (or $68,200.00) |
| Broker Carve-Out | 2% (or $68,200.00) |
| Total Commission | 6% (or $204,600.00) |

Escrow fees shall be split between Buyer and the Estate in the manner customary in the County where the Property is located (Orange County, California).

**J.**    **Tax Consequences**

In the event that there is any tax liability generated from the sale of the Estate's interest in the Property that is a liability of the Estate, it is anticipated that such taxes will be minimal and will be paid from the proceeds of the sale.

### III.    ARGUMENT[3]

**A.**    **There is a Good Business Reason for the Sale and the Sale is in the Best Interest of the Estate.**

The duties of a trustee in a Chapter 7 filing are enumerated in 11 U.S.C. § 704, which provides in relevant part as follows:

(a) The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

11 U.S.C. § 704(a).

---

[2] The total amount of real estate broker's commission will increase if the purchase price for the Property is increased by a successful overbid; but in no event will exceed 6% of the purchase price.

[3] Although Local Bankruptcy Rule 6004-1(c)(2)(C) does not require that a memorandum of points and authorities be filed in support of the Motion, the Trustee is nevertheless submitting one.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

18

6839-000 Sale Motion TC Villa Park

Further, the Trustee, after notice and hearing, may sell property of the estate.  11 U.S.C. § 363(b).  Courts ordinarily will approve a proposed sale if there is a good business reason for the sale and the sale is in the bests interests of the estate.  *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983).  In this case, the Estate is anticipated to receive at least $271,700 from various carveouts the secured creditors and from the broker's commission.

| | |
|---|---|
| Sale Price (or an amount as increased by overbid) | $3,410,000.00 |
| *Less* estimated costs of sale (estimated at 1% for costs of sale and real estate commission of 6%, for a total of 7%), less 2% Broker Carve-Out | ($238,700.00) |
| *Less* Advanced Costs (estimated) | ($12,000.00) |
| *Less* property taxes (pro-rata) (estimated) | ($52,472.06) |
| *Less* payoff on the secured lien of Camanna LLC (estimated) | ($2,429,526.26) |
| *Less* payoff on the secured lien of PDA Inc. (unless otherwise agreed by PDA Inc.) | ($235,907.76) |
| Estimated net sale proceeds to which disputed Liens and Encumbrances not resolved or satisfied through the sale will attach pending agreement with the lienholder or Court Order.<br><br>**The estimated net proceeds will increase in the event the purchase price is increased by a successful overbid.** | $441,393.92 |

The Trustee believes that the proposed sale, subject to overbids, will be at fair market value because it is the best offer the Estate has received thus far for the Property after the inspection date. Given that the sale is subject to overbids, it is anticipated the Trustee will receive the best and highest value for the Property, and therefore, the proposed sale price of the Property is fair and reasonable.

Accordingly, the Trustee respectfully submits that, if this Court applies the good business reason standard suggested by the Second Circuit in *Lionel*, the sale should be approved.

**B.**   **The Proposed Sale Should be Allowed Free and Clear of Liens**

Bankruptcy Code § 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

(1)    applicable non-bankruptcy law permits a sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

19

6839-000 Sale Motion TC Villa Park

1          (4)      such interest is in bona fide dispute; or

2          (5)      such entity could be compelled, in a legal or equitable proceeding, to
accept money satisfaction of such interest.

3

4    11 U.S.C. § 363(f).  Bankruptcy Code § 363(f) is written in the disjunctive and thus only one of the

5    enumerated conditions needs to be satisfied for Court approval to be appropriate.  The Trustee

6    proposes to sell under §§ 363(f)(2), 363(f)(3) and 363(f)(4).

7          **1.      <u>Bankruptcy Code § 363(f)(2) – Consent</u>**

8          The sale of the Property is proper pursuant to § 363(f)(2).  The secured real property taxes,

9    the Camanna DOT, and the PDA Lien will be paid through escrow on the sale in the full amount

10   asserted owing by the lienholders, unless otherwise agreed to between such lienholder and the

11   Trustee. Based on their anticipated consent to the sale, the Trustee will have satisfied § 363(f)(2).

12         **2.      <u>Bankruptcy Code § 363(f)(3) – Price Greater than Value</u>**

13         The sale of the Property is proper pursuant to § 363(f)(3).  The sale price is for a sum that is

14   greater than the aggregate value of the non-disputed liens listed in the Title Report.

15         **3.      <u>Bankruptcy Code § 363(f)(4) – Bona Fide Dispute</u>**

16         As set forth in the chart above, the disputed Liens and Encumbrances are the Green Lotus

17   1st Lien, the Green Lotus 2nd Lien and the Tran DOT.

18         With respect to the Tran DOT, the Trustee believes that the Tran DOT was recorded in

19   violation of the automatic stay under Bankruptcy Code § 362, and therefore, under applicable federal

20   bankruptcy law, the Tran DOT is invalid as any action taken in violation of the automatic stay is

21   void as a matter of law.  *See, In re Schwartz*, 951 Fed.2d, 596 (9th Cir. 1992).  Further, the Trustee

22   believes that there are causes of action under Bankruptcy Code § 549 to have the Tran DOT set

23   aside in that it was recorded after the Petition Date, and was not authorized by the Bankruptcy Code

24   nor order of the Bankruptcy Court.

25         With respect to the Green Lotus 1st Lien and the Green Lotus 2nd Lien, the validity and

26   amount of these liens are disputed by the Trustee.  The Trustee has communicated with the

27   lienholder's counsel and believes that the lienholder will agree to accept a reduced amount on

28   account of its lien prior to the hearing on the Sale Motion.  In the event an agreement is reached, the

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

20

6839-000 Sale Motion TC Villa Park

Trustee will supplement this Sale Motion to provide the pertinent information. Specifically, the Trustee understands that the funds relating to the Green Lotus 1st Lien and the Green Lotus 2nd Lien were provided to an individual and not to the Debtor entity and thus, the Trustee believes the Debtor did not receive reasonably equivalent value and can be avoided as a constructive fraudulent transfer pursuant to Bankruptcy Code § 548.

In summary, the Trustee seeks Court approval of the sale of the Property free and clear of the disputed Liens and Encumbrances, with all disputed Liens and Encumbrances to be unconditionally released, discharged and terminated, and with any disputed Liens and Encumbrances not resolved or satisfied through the sale to attach only to the proceeds of the transaction with the same priority, validity, force and effect as they existed with respect to the Property before the closing of the sale pending further Court order or agreement with the lienholders.

The Trustee does not believe it is prudent or necessary to resolve the disputes with holders of any disputed Liens and Encumbrances by Court order or judgment prior to the sale. The unresolved disputed Liens and Encumbrances, if any, would be subject to a bona fide dispute and the Bankruptcy Code provides for a means to sell free and clear of such interests. If the Estate is forced to wait for resolution of the disputes, if any, the Trustee may lose the opportunity to capitalize on the current interest from the Buyer and the Estate will have to expend further funds to list and market the Property for sale, which will dilute the amount of funds available for the Estate.

Any claim that holders of the disputed Liens and Encumbrances may have against the Estate related to the Property, if any, are anticipated to be the subject of bona fide disputes and therefore the sale may go forward free and clear of such claims pursuant to § 363(f)(4). A bona fide dispute has been defined by *In re Atwood*, 124 B.R. 402 (Bankr. S.D. Ga. 1991) as a "genuine issue of material fact that bears upon the debtor's liability, or meritorious contention as to the application of law to undisputed facts." *Id.* at 407. In *In re Milford Group, Inc.,* 150 B.R. 904 (Bankr. M.D. Pa. 1992), the court stated it need not resolve a bona fide dispute, but must determine whether the issues presented are genuine as to the existence of a bona fide dispute. In doing so, the court in *Milford* found that the debtor had met its burden to establish cause for the court to allow for the sale of the

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

21

6839-000 Sale Motion TC Villa Park

1  property, free and clear of liens. Requiring resolution of those issues before the sale of the Property

2  may likely take substantial time, effort and expense by the parties.

3       In the instant case, the proposed sale of the Property conforms with the requirements of §

4  363(f)(4) in that the Trustee has established the existence of bona fide disputes with the holders of

5  disputed Liens and Encumbrances.

6       The policy behind allowing property to be sold free and clear of disputed interests provides

7  that the disputes do not bog down the swift and orderly liquidation of assets for the highest possible

8  value. In this case, more than any other, where the asset is real estate that is subject to fluctuations

9  in the market, interest rates and other factors that impact its value, it is absolutely essential for the

10 Trustee to be able to quickly liquidate the Estate's interest in the Property for its maximum possible

11 value. By demonstrating the existence of the bona fide disputes, § 363(f) allows the Property to be

12 sold free and clear of any lien that is subject to a dispute so that at a minimum, proceeds can be

13 generated for distribution to parties. If every sale were subject to resolution of disputes that were in

14 existence, expense and time associated with litigation would significantly impact values that could

15 be obtained by trustees and/or other estate fiduciaries for the benefit of creditors. Resolution of the

16 issues with regard to the claims of the holders of disputed Liens and Encumbrances, if any, may

17 likely take substantial time, effort and expense by the parties. That process should not hinder, delay

18 or in any way inhibit the Trustee's efforts to maximize the value of the sale of Property.

19      Accordingly, to the extent that there are disputed liens unresolved at closing, the Trustee

20 proposes to sell under § 363(f)(4) with unresolved liens and interests, if any, attaching to the sale

21 proceeds with the same force, effect, validity, and priority as such liens or interests had with respect

22 to the Property prior to the sale.

23 **C.**    **Request for Payment of Real Estate Commission to Broker**

24      Bankruptcy Code § 328 allows employment of a professional person under § 327 "on any

25 reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a

26 fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Through this Sale

27 Motion, the Trustee seeks authorization to pay a real estate broker commission in the amount of six

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

22

6839-000 Sale Motion TC Villa Park

1   percent (6%) of the purchase price (or $204,600.00) to be split as follows:  2% to the Broker and

2   2% to the Buyer's Broker, Ana Real Estate, and 2% to the Trustee on behalf of the Estate.

3   **D.      The Court Has the Authority to Approve the Bidding Procedures.**

4            Implementing the Bidding Procedures is an action outside of the ordinary course of the

5   business.  Bankruptcy Code § 363(b)(1) provides that a trustee "after notice and hearing, may use,

6   sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §

7   363(b)(1). Furthermore, under Bankruptcy Code § 105(a), "[t]he court may issue any order, process,

8   or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §

9   105(a).  Thus, pursuant to §§ 363(b)(1) and 105(a) of the Bankruptcy Code, this Court may approve

10  the Bidding Procedures, which will assist the Trustee to obtain the best possible price on the best

11  possible terms for the Property.

12  **E.      The Court Has the Authority to Waive the Fourteen-Day Stay of Sale.**

13           Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the use,

14  sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry

15  of the order, unless the Court orders otherwise." Fed. Rule Bankr. P. 6004(h).  The Trustee desires

16  to close the sale of the Property as soon as practicable after entry of an order approving the sale.

17  Accordingly, the Trustee requests that the Court, in the discretion provided it under Federal Rule of

18  Bankruptcy Procedure 6004(h), waive the fourteen-day stay requirement.

19  **F.      The Court Has the Authority to Find That the Buyer is a Good Faith Purchaser.**

20           The Trustee requests a determination that the Buyer is a good faith purchaser pursuant to 11

21  U.S.C. § 363(m).  There is broad authority for this Court to find that the Buyer is a good faith

22  purchaser where the Court has evidence of a purchaser's good faith and that the purchase is for

23  value. *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992).  Here, the Buyer has no relation to the Trustee

24  or the Debtor and is not a creditor of the bankruptcy estate.  The sale is an arm's length transaction

25  and there is no allegation or evidence that the Buyer has engaged in fraud, collusion, or attempted

26  to take grossly unfair advantage of other bidders. Moreover, the Property has been marketed to the

27  public for a period of several months and the sale is subject to overbidding at the hearing on this

28  Sale Motion.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

23

6839-000 Sale Motion TC Villa Park

# IV.    <u>CONCLUSION</u>

Based on the reasons set forth above, the Trustee respectfully request submits that good cause exists for granting the Sale Motion and requests that the Court enter an order as follows:

1.    Approving the Bidding Procedures set forth above for the sale of the Property.

2.    Authorizing the Trustee to sell the Property on an as-is, where-is basis, without any warranties or representations, to the Buyer (or Successful Bidder) pursuant to the terms and conditions as set form in the Agreement attached as **Exhibit 3** to the Marshack Declaration.

3.    Authorizing the sale of the Property free and clear of liens, with liens not satisfied through the sale to attach to the sale proceeds in the same validity and priority as prior to the closing of the sale.

4.    Authorizing the Trustee to sign any and all documents convenient and necessary in pursuit of the sale, including but not limited to any and all conveyances contemplated by the Agreement attached as **Exhibit 3** to the Marshack Declaration.

5.    Approving the payment of the real estate commission in the total amount not to exceed six percent (6%) of the final purchase price, to be split between the Trustee's Broker and the Buyer's broker, Ana Real Estate as follows:  2% to the Broker and 2% to the Buyer's Broker, Ana Real Estate, and 2% to the Trustee on behalf of the Estate.

6.    Authorizing the Trustee to pay the following from the sale proceeds through escrow on the sale of the Property: (i) all real property taxes, (ii) all amounts owed on the Camanna DOT, (iii) all amounts owed on the PDA Lien, (iv) reimbursement to the Broker for amounts advanced to maintain the Property estimated to not exceed $12,000.00, (v) amount owed to Intac Advisory for insurance premium on the Property in the amount of $2,876.72, and (vi) escrow fees and other costs of sale to be split between the Buyer and the Estate in the manner customary in Orange County, California where the Property is located.

7.    Determining that the Buyer is in good faith pursuant to 11 U.S.C. § 363(m).

8.    Waiving the fourteen-day stay of the order approving the sale of the Property under Federal Rules of Bankruptcy Procedure 6004(h).

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

24

6839-000 Sale Motion TC Villa Park

1    9.    For such other and further relief as the Court deems just and proper under the

2  circumstances of this case.

3                                        Respectfully submitted,

4  Dated:  April 9, 2024        **SHULMAN BASTIAN FRIEDMAN & BUI LLP**

5                                        /s/ Melissa Davis Lowe

6                                        _____

7                                        Leonard M. Shulman
                                         Melissa Davis Lowe
8                                        Attorneys for Richard A. Marshack, Chapter 7 Trustee
                                         for the bankruptcy estate of *In re Villa Park Mansion LLC,*
9                                        Case No. 8:23-bk-12204-SC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6839-000 Sale Motion TC Villa Park

# DECLARATION OF RICHARD A. MARSHACK

I, Richard A. Marshack, declare and state as follows:

1. I am the duly appointed, qualified and acting Chapter 7 trustee for the bankruptcy estate of *In re Villa Park Mansion LLC* ("Debtor"). I have personal knowledge of the facts set forth herein, and if called and sworn as a witness, I could and would competently testify thereto, except where matters are stated on information and belief, in which case I am informed and believe that the facts so stated are true and correct.

2. I am familiar with the Debtor's bankruptcy case and make this Declaration in support of my *Motion for Order: (1) Approving the Sale of Real Property of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b)(1) and (f), Subject to Overbids, Combined With Notice of Bidding Procedures and Request for Approval of the Bidding Procedures Utilized; (2) Approving Payment of Real Estate Commission and Other Costs; and (3) Granting Related Relief* ("Sale Motion"). Capitalized terms not otherwise defined herein shall have the meaning set forth in the Sale Motion.

3. I have read and I am aware of the contents of the Sale Motion and the accompanying Memorandum of Points and Authorities. The facts stated in the Sale Motion and the Memorandum of Points and Authorities are true to the best of my knowledge.

4. The deadline to file claims in this case was February 20, 2024. The Court's claims register indicates that there have been five claims filed totaling $3,485,802.79. Of those, $3,485,002.79 are secured claims, which either will not be entitled to a dividend from the Estate or will be resolved through escrow on the sale of the Property.[4] One unsecured priority claim has been filed by the California Franchise Tax Board, Claim 1, in the amount of $800.00.

5. Attached here as **Exhibit 1** are true and correct copies of the Debtor's Petition and Schedules A/B and D.

---

[4] Secured claims include: Claim 2 filed by PDA Inc. in the amount of $235,907.76 allegedly secured by the Property but no evidence of perfection of a security interest was provided; Claim 3 filed by Camanna, LLC in the amount of $2,230,699.14 secured by the Property; Claim 4 filed by Green Lotus Group, LLC in the amount of $818,395.89 secured by the Property and Claim 5 filed by Green Lotus Group, LLC in the amount of $200,000.00 secured by the Property.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

26

6839-000 Sale Motion TC Villa Park

6.      Attached here as **Exhibit 2** is true and copy of the Preliminary Report for the Property dated February 16, 2024 ("Title Report").  From a review of real property records, I am informed that the loan by Camanna LLC is in default and that a notice of sale was recorded on September 29, 2023 and a sale was scheduled for October 27, 2023.

7.      Upon my application filed on February 22, 2024 [docket 27] and pursuant to Court order entered on March 15, 2024 [docket 31], I was authorized to employ Clarence Yoshikane of Berkshire Hathaway HomeServices California Properties as my broker ("Broker") to assist with the marketing of the Property for sale.  The listing agreement with the Broker provides for a real estate commission in an amount equal to six percent (6%) of the purchase price, with a two percent (2%) carve-out of such commission for the benefit of the Estate. Thus, subject to Court approval of the Sale Motion, the real estate broker commission for the sale of the Property shall not exceed six percent (6%) of the purchase price for the Property, to be split as follows: two percent (2%) to Buyer's agent, two percent (2%) to the Broker, and two percent (2%) carved out and assigned to the Estate ("Broker Carve-Out").

8.      The Broker advised me that the Property had a fair market value that supported a listing price of $3,599,900.00. The listing price was determined on comparable sales of similar properties in the area and the condition of the Property.

9.      I am informed that the Broker has marketed the Property across multiple channels for about two months.  I am advised that the Broker prepared a comprehensive marketing package and contacted potential buyers by telephone, email, and hard mail, in addition to listing the Property on the MLS and multiple websites.  Since the Property was listed, the Broker has advised that there have been 11 agent calls and approximately 3 buyer calls.  The Property has been shown 12 times. The Buyer has made the highest and best offer after negotiations.

10.     The Estate does not have the funds to obtain a formal written appraisal for the estimated value of the Property.  The Broker is experienced in the sale of real property as well as property valuations and is familiar with valuing real property in today's economic environment.

11.     Through my Broker, I received an offer from Hao Bui and Thuy Nguyen (collectively, the "Buyer") to purchase the Property for $3,410,000.00, subject to overbids.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

27

6839-000 Sale Motion TC Villa Park

1  Attached here as **Exhibit 3** is a true and correct copy of the Residential Purchase Agreement and

2  Joint Escrow Instructions and related addendums.

3      12.    The Buyer's offer is best one received.  I believe that the proposed sale, which is

4  subject to overbids, will be at fair market value. The market, not hypothetical appraisals, is the best

5  determinant of value.  Given that the sale is subject to overbids, the Estate is expected to receive the

6  best and highest value for the Property.

7      13.    In the event that there is any tax liability generated from the sale of the Estate's

8  interest in the Property that is a liability of the Estate, it is anticipated that such taxes will be minimal

9  and will be paid from the proceeds of the sale.

10     14.    Through the Sale Motion, I am requesting approval to use the proceeds of the sale to

11  reimburse the Broker an amount not to exceed $12,000.00 ("Advanced Costs") for the expenses the

12  Broker incurred to preserve, maintain and secure the Property so that it could be marketed for sale

13  at the highest possible price.  Specifically, I am informed that the Broker has paid or will pay

14  (through closing on the sale of the Property): approximately $1,200.00 for a mobile locksmith,

15  approximately $200.00 per month for pool service (plus a one-time clean-up of $325.00),

16  approximately $3,000.00 for trash removal, and approximately $600.00 per month for utilities

17  (water, gas and electric).  Reimbursement to the Broker for the Advanced Costs will be at my

18  discretion upon presentation of invoices.

19     15.    In addition to the Advanced Costs, I was required to procure a general liability

20  insurance policy through Trustee Insurance Agency, Inc. by Intac Advisory.  The Estate currently

21  owes $2,876.72 to Intac Advisory for the insurance premium and finance charges.  Through the Sale

22  Motion, I am requesting Court approval to pay Intac Advisory the outstanding amount due which is

23  $2,876.72.

24  ///

25  ///

26  ///

27

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

28

6839-000 Sale Motion TC Villa Park

16.    For the reasons set forth in the Sale Motion and this Declaration, I respectfully request that the Court grant the Sale Motion as it presents a valuable business opportunity for the Estate and its creditors.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on April 8, 2024.

Richard A. Marshack

SHULMAN BASTIAN
FRIEDMAN & BUI  LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6839-000 Sale Motion TC Villa Park

## <u>DECLARATION OF CLARENCE YOSHIKANE</u>

I, Clarence Yoshikane, declare as follows:

1.     I am a licensed real estate agent in the State of California and associated with Berkshire Hathaway HomeServices California Properties.   I am over 18 years of age and I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto.  I am also personally familiar with the real property located at 18462 Villa Drive, Villa Park, California 92861 ("Property").

2.     I make this Declaration in support of the *Chapter 7 Trustee's Motion for Order: (1) Approving the Sale of Real Property of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b)(1) and (f), Subject to Overbids, Combined With Notice of Bidding Procedures and Request for Approval of the Bidding Procedures Utilized; (2) Approving Payment of Real Estate Commission and Other Costs; and (3) Granting Related Relief* ("<u>Motion</u>").  Unless otherwise noted, capitalized terms in this Declaration have the meaning set forth in the Motion.

3.     On March 15, 2024, the Court entered an Order authorizing my employment  to assist the Trustee with the marketing and sale of the Property [Docket 31] ("<u>Employment Order</u>").  The listing agreement for the sale of the Property provides for a real estate commission in an amount equal to six percent (6%) of the purchase price, with a two percent (2%) carve-out of such commission for the benefit of the Estate.

4.     I have marketed the Property across multiple channels for about two months.  I prepared a comprehensive marketing package and contacted potential buyers by telephone, email, and hard mail, in addition to listing the Property on the MLS and multiple websites.  Since the Property was listed, there have been 11 agent calls and approximately 3 buyer calls.  The Property has been shown 12 times.

5.     The best determination of price is the market, which has spoken. There have been multiple inquiries and the Buyer's offer is the result of negotiations for the highest and best offer. Since accepting the Buyer's offer, I have continued to market the Property for overbids, which are subject to the prospective buyers' inspections and due diligence.

SHULMAN BASTIAN
FRIEDMAN & BUI  LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

30

6839-000 Sale Motion TC Villa Park

6.    Further, I have more than forty (40) years of experience in the sale of real property as well as property valuations and am familiar with valuing real property in today's economic environment. I have advised the Trustee that I believe the current sale price is consistent with local area comparable properties.

7.    Because the best determination of price is the market, and because the proposed sale is subject to overbids, the sale will be at fair market value. Based on this, it is anticipated that the Trustee will receive the best and highest value for the Property and therefore I believe that the proposed sale price is fair and reasonable.

8.    I have advanced funds relating to the Property in the total estimated amount of $12,000.00 ("Advanced Funds"). Specifically, I have paid or will pay (through closing on the sale of the Property): approximately $1,200.00 for a mobile locksmith, approximately $200.00 per month for pool service (plus a one-time clean-up of $325.00), approximately $3,000.00 for trash removal, and approximately $600.00 per month for utilities (water, gas and electric).

I declare under penalty of perjury under the laws of the United States of America that the facts set forth herein are true and correct.

Executed at Newport Beach, California on April ___, 2024.

Clarence Yoshikane

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

31

6839-000 Sale Motion TC Villa Park

# Exhibit 1

# Schedules A/B and D

**Fill in this information to identify the case:**

Debtor name __Villa Park Mansion LLC__

United States Bankruptcy Court for the: __Central__   District of __CA__
                                                                  (State)

Case number (if known): __8:23-bk-12204__

☐ Check if this is an amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property   12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1:   Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

   ☑ No. Go to Part 2.
   ☐ Yes. Fill in the information below.

   **All cash or cash equivalents owned or controlled by the debtor**
   
   Current value of debtor's interest

2. **Cash on hand**
   $_____

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

   | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
   |---|---|---|---|
   | 3.1. _____ | _____ | ____ ____ ____ ____ | $_____ |
   | 3.2. _____ | _____ | ____ ____ ____ ____ | $_____ |

4. **Other cash equivalents** *(Identify all)*

   | | |
   |---|---|
   | 4.1. _____ | $_____ |
   | 4.2. _____ | $_____ |

5. **Total of Part 1**
   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.
   $          0.00

## Part 2:   Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

   ☑ No. Go to Part 3.
   ☐ Yes. Fill in the information below.

   Current value of debtor's interest

7. **Deposits, including security deposits and utility deposits**

   Description, including name of holder of deposit

   | | |
   |---|---|
   | 7.1. _____ | $_____ |
   | 7.2. _____ | $_____ |

**EXHIBIT "1"**

Debtor    Villa Park Mansion LLC    Case number *(if known)* 8:23-bk-12204
Name

**8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1._____ $_____

8.2._____ $_____

**9. Total of Part 2.**
Add lines 7 through 8. Copy the total to line 81.                    $_____0.00

## Part 3: Accounts receivable

**10. Does the debtor have any accounts receivable?**
☑ No. Go to Part 4.
☐ Yes. Fill in the information below.

Current value of debtor's
interest

**11. Accounts receivable**

11a. 90 days old or less:  _____ – _____ = ......➔    $_____
                          face amount    doubtful or uncollectible accounts

11b. Over 90 days old:  _____ – _____ = ......➔    $_____
                        face amount    doubtful or uncollectible accounts

**12. Total of Part 3**
Current value on lines 11a + 11b = line 12. Copy the total to line 82.    $_____0.00

## Part 4: Investments

**13. Does the debtor own any investments?**
☑ No. Go to Part 5.
☐ Yes. Fill in the information below.

|  | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

**14. Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1._____    _____    $_____
14.2._____    _____    $_____

**15. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                    % of ownership:

15.1._____    _____%    _____    $_____
15.2._____    _____%    _____    $_____

**16. Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1._____    _____    $_____
16.2._____    _____    $_____

**17. Total of Part 4**
Add lines 14 through 16. Copy the total to line 83.    $_____0.00

**EXHIBIT "1"**

Debtor    Villa Park Mansion LLC                                   Case number (if known) 8:23-bk-12204
          Name

---

**Part 5:    Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** | | | | |
| _____ | ___ MM / DD / YYYY | $_____ | _____ | $_____ |
| **20. Work in progress** | | | | |
| _____ | ___ MM / DD / YYYY | $_____ | _____ | $_____ |
| **21. Finished goods, including goods held for resale** | | | | |
| _____ | ___ MM / DD / YYYY | $_____ | _____ | $_____ |
| **22. Other inventory or supplies** | | | | |
| _____ | ___ MM / DD / YYYY | $_____ | _____ | $_____ |

23. **Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

$_____ 0.00

24. **Is any of the property listed in Part 5 perishable?**

☐ No
☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No
☐ Yes. Book value _____ Valuation method_____ Current value_____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No
☐ Yes

---

**Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** | | | |
| _____ | $_____ | _____ | $_____ |
| **29. Farm animals** Examples: Livestock, poultry, farm-raised fish | | | |
| _____ | $_____ | _____ | $_____ |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| _____ | $_____ | _____ | $_____ |
| **31. Farm and fishing supplies, chemicals, and feed** | | | |
| _____ | $_____ | _____ | $_____ |
| **32. Other farming and fishing-related property not already listed in Part 6** | | | |
| _____ | $_____ | | $_____ |

**EXHIBIT "1"**

**33. Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85.

$ _____ 0.00

**34. Is the debtor a member of an agricultural cooperative?**

☐ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

☐ No

☐ Yes

**35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value $ _____ Valuation method _____ Current value $ _____

**36. Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

**37. Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

---

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39. Office furniture** | $ _____ | _____ | $ _____ |
| **40. Office fixtures** | $ _____ | _____ | $ _____ |
| **41. Office equipment, including all computer equipment and communication systems equipment and software** | $ _____ | _____ | $ _____ |

**42. Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

| | | | |
|---|---|---|---|
| 42.1 _____ | $ _____ | | $ _____ |
| 42.2 _____ | $ _____ | | $ _____ |
| 42.3 _____ | $ _____ | | $ _____ |

**43. Total of Part 7.**

Add lines 39 through 42. Copy the total to line 86.

$ _____ 0.00

**44. Is a depreciation schedule available for any of the property listed in Part 7?**

☐ No

☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☐ No

☐ Yes

**EXHIBIT "1"**

Debtor    Villa Park Mansion LLC
      Name

Case number (if known) 8:23-bk-12204

---

## Part 8:    Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description<br><br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

| | | | |
|---|---|---|---|
| 47.1 _____ | $ _____ | _____ | $ _____ |
| 47.2 _____ | $ _____ | _____ | $ _____ |
| 47.3 _____ | $ _____ | _____ | $ _____ |
| 47.4 _____ | $ _____ | _____ | $ _____ |

48. **Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

| | | | |
|---|---|---|---|
| 48.1 _____ | $ _____ | _____ | $ _____ |
| 48.2 _____ | $ _____ | _____ | $ _____ |

49. **Aircraft and accessories**

| | | | |
|---|---|---|---|
| 49.1 _____ | $ _____ | _____ | $ _____ |
| 49.2 _____ | $ _____ | _____ | $ _____ |

50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

| | | | |
|---|---|---|---|
| _____ | $ _____ | _____ | $ _____ |

51. **Total of Part 8.**
Add lines 47 through 50. Copy the total to line 87.

| |
|---|
| $_____0.00 |

52. **Is a depreciation schedule available for any of the property listed in Part 8?**
☐ No
☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
☐ No
☐ Yes

---

**EXHIBIT "1"**

Debtor    Villa Park Mansion LLC
_____    Case number (if known)    8:23-bk-12204
Name

---

| Part 9: | Real property |
|---|---|

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.

☑ Yes. Fill in the information below.

**55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as<br>Assessor Parcel Number (APN), and type of property<br>(for example, acreage, factory, warehouse, apartment<br>or office building), if available. | Nature and extent<br>of debtor's interest<br>in property | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|---|
| 55.1 18462 Villa Drive, Villa Park, CA | | $ | | $    4,500,000.00 |
| 55.2 92861 | | $ | | $ |
| 55.3 | | $ | | $ |
| 55.4 | | $ | | $ |
| 55.5 | | $ | | $ |
| 55.6 | | $ | | $ |

**56. Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.    | $    4,500,000.00 |

**57. Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No

☐ Yes

**58. Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☐ No

☑ Yes

---

| Part 10: | Intangibles and intellectual property |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| General description | Net book value of<br>debtor's interest<br>(Where available) | Valuation method<br>used for current value | Current value of<br>debtor's interest |
|---|---|---|---|
| **60. Patents, copyrights, trademarks, and trade secrets** | $ | | $ |
| **61. Internet domain names and websites** | $ | | $ |
| **62. Licenses, franchises, and royalties** | $ | | $ |
| **63. Customer lists, mailing lists, or other compilations** | $ | | $ |
| **64. Other intangibles, or intellectual property** | $ | | $ |
| **65. Goodwill** | $ | | $ |

**66. Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.    | $    0.00 |

**EXHIBIT "1"**

Debtor    Villa Park Mansion LLC _____    Case number (if known)  8:23-bk-12204
       <sub>Name</sub>

67. **Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?**
   ☐  No
   ☐  Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
   ☐  No
   ☐  Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
   ☐  No
   ☐  Yes

---

## Part 11:  All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.
   ☑  No. Go to Part 12.
   ☐  Yes. Fill in the information below.

                                             **Current value of debtor's interest**

71. **Notes receivable**
Description (include name of obligor)

_____  —  _____  = ➔  $_____
      Total face amount      doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

_____    Tax year _____  $_____
_____    Tax year _____  $_____
_____    Tax year _____  $_____

73. **Interests in insurance policies or annuities**
                                              $_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**
                                            $_____

Nature of claim  _____
Amount requested  $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**
                                            $_____

Nature of claim  _____
Amount requested  $_____

76. **Trusts, equitable or future interests in property**
                                            $_____

77. **Other property of any kind not already listed**  *Examples:* Season tickets, country club membership
                                            $_____
                                            $_____

78. **Total of Part 11.**
Add lines 71 through 77. Copy the total to line 90.
                                         $_____0.00

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
   ☐  No
   ☐  Yes

**EXHIBIT "1"**

Debtor    Villa Park Mansion LLC                                           Case number (if known) 8:23-bk-12204
             Name

| Part 12: | Summary |
|---|---|

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ 0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ 0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ 0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* .......................... ➔ | | $ 4,500,000.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ 0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $ 0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column. ..........91a. | $ 0.00 | + 91b. $ 4,500,000.00 |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ................................................. $ 4,500,000.00

**EXHIBIT "1"**

**Fill in this information to identify the case:**

Debtor name  Villa Park Mansion LLC

United States Bankruptcy Court for the:  Central  District of  CA
(State)

Case number (If known):  8:23-bk-12204

☐ Check if this is an amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible.

1.  **Do any creditors have claims secured by debtor's property?**
    ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
    ☑ Yes. Fill in all of the information below.

| **Part 1:** | **List Creditors Who Have Secured Claims** |
| --- | --- |

2.  **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

|  | | **Column A**<br>Amount of claim<br>Do not deduct the value of collateral. | **Column B**<br>Value of collateral that supports this claim |
| --- | --- | --- | --- |

**2.1**

| Creditor's name | Describe debtor's property that is subject to a lien | | |
| --- | --- | --- | --- |
| Camanna LLC | 18462 Villa Drive, Villa Park, Ca 92861 | $ 2,012,500.00 | $ 4,500,000.00 |

Creditor's mailing address
6535 Wilshire Boulevard, Suite 206, Los Angeles Ca 90048

Describe the lien

Creditor's email address, if known

Is the creditor an insider or related party?
☑ No
☐ Yes

Date debt was incurred  12/8/2021

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

Last 4 digits of account number  ___ ___ ___ ___

Do multiple creditors have an interest in the same property?
☐ No
☑ Yes. Specify each creditor, including this creditor, and its relative priority.
2.1, 2.2, 2.3, 2.4

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**2.2**

| Creditor's name | Describe debtor's property that is subject to a lien | | |
| --- | --- | --- | --- |
| PDA Inc | 18462 Villa Drive, Villa Park, Ca 92861 | $ 216,000.00 | $ 4,500,000.00 |

Creditor's mailing address  16055 Slater Ave Ste 216, Fountain Valley, Ca 92708

Describe the lien

Creditor's email address, if known

Is the creditor an insider or related party?
☑ No
☐ Yes

Date debt was incurred  12/15/2022

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

Last 4 digits of account number  ___ ___ ___ ___

Do multiple creditors have an interest in the same property?
☐ No
☑ Yes. Have you already specified the relative priority?
☐ No. Specify each creditor, including this creditor, and its relative priority.

☑ Yes. The relative priority of creditors is specified on lines  2.1

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

3.  **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**     $ 3,175,800.00

EXHIBIT "I"

Debtor    Villa Park Mansion LLC                                    Case number (if known) 8:23-bk-12204
         _____
         Name

---

| **Part 1:** | **Additional Page** | Column A<br>**Amount of claim**<br>Do not deduct the value<br>of collateral. | Column B<br>**Value of collateral<br>that supports this<br>claim** |

Copy this page only if more space is needed. Continue numbering the lines sequentially from the
previous page.

**2._** Creditor's name

Green Lotus Group LLC

Creditor's mailing address
8892 Cliffside Drive
Hunting Beach, CA 92646

Creditor's email address, if known

Date debt was incurred 7/5/2022

Last 4 digits of account
number ___ ___ ___ ___

Do multiple creditors have an interest in the
same property?
☐ No
☑ Yes. Have you already specified the relative
     priority?
     ☐ No. Specify each creditor, including this
          creditor, and its relative priority.
          _____
          _____
          _____

     ☑ Yes. The relative priority of creditors is
          specified on lines 2.1

Describe debtor's property that is subject to a lien

18462 Villa Drive, Villa Park, Ca 92861     $ 736,800.00   $ 4,500,000.00
_____
_____
_____

Describe the lien
_____

Is the creditor an insider or related party?
☐ No
☑ Yes

Is anyone else liable on this claim?
☐ No
☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

---

**2._** Creditor's name

Green Lotus Group LLC

Creditor's mailing address

8892 Cliffside Drive, Huntington
Beach, Ca 92646

Creditor's email address, if known

Date debt was incurred 10/17/2022

Last 4 digits of account
number ___ ___ ___ ___

Do multiple creditors have an interest in the
same property?
☐ No
☑ Yes. Have you already specified the relative
     priority?
     ☐ No. Specify each creditor, including this
          creditor, and its relative priority.
          _____
          _____
          _____

     ☑ Yes. The relative priority of creditors is
          specified on lines 2.1

Describe debtor's property that is subject to a lien

18462 Villa Drive, Villa Park, Ca 92861     $ 210,500.00   $ 4,500,000.00
_____
_____
_____

Describe the lien
_____

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☐ No
☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**EXHIBIT "1"**

Debtor     Villa Park Mansion LLC                          Case number *(if known)* 8:23-bk-12204
         Name

## Part 2:  List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |

## EXHIBIT "1"

# Exhibit 2

# Title Report



Lawyers Title Company
7530 N. Glenoaks Blvd.
Burbank, CA 91504
Phone: (818) 767-2000
Fax: (818) 504-4937

Berkshire Hathaway HomeService
1400 Newport Center Dr #200
Newport Beach, CA 92660

Attn: Jennifer Toyama

Title Officer: Michael Chediak--So
email: tu07@ltic.com
Phone No.: (818) 252-6050 x 6050
Fax No.: (818) 252-4549
File No.:  124070576

Your Reference No: 18462 VILLA DR

Property Address:    18462 Villa Drive, Villa Park, California

# PRELIMINARY REPORT

Dated as of February 16, 2024 at 7:30 a.m.

In response to the application for a policy of title insurance referenced herein, Lawyers Title Company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One.  The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitation on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One.  Copies of the policy forms should be read.  They are available from the office which issued this report.

The policy(s) of title insurance to be issued hereunder will be policy(s) of **Commonwealth Land Title Insurance Company.**

***Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Attachment One of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.  It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.***

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

**EXHIBIT "2"**

File No:  124070576

# SCHEDULE A

The form of policy of title insurance contemplated by this report is:

2021 Homeowner's Policy
ALTA Loan 2021

The estate or interest in the land hereinafter described or referred to covered by this report is:

**A FEE as to Parcel 1;**
**AN EASEMENT more fully described below as to Parcel 2**

Title to said estate or interest at the date hereof is vested in:

**Villa Park Mansion LLC, a California limited liability company, subject to proceedings pending in the Bankruptcy Court where a petition commencing the case was filed on October 25, 2023, by or on behalf of Villa Park Mansion LLC, as Debtor, in the Central U.S. District Court as Case No. 2023-12204.**

The land referred to herein is situated in the County of Orange, State of California, and is described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

**EXHIBIT "2"**

File No:  124070576

# EXHIBIT "A"

All that certain real property situated in the County of Orange, State of California, described as follows:

Parcel A:

Parcel 2 as shown on Parcel Map No. 95-142, in the City of Villa Park, County of Orange, State of California, as per Map filed in Book 287, Pages 49 and 50 of Parcel Maps, in the office of the County Recorder of said County.

Parcel B:

A 25 Foot Wide Easement for ingress, egress, and utility purposes, over Parcels 1 and 2 as shown on Parcel Map No. 89-275, as per Map filed in Book 268, Pages 48 through 50 inclusive of Parcel Maps, in the office of the County Recorder of said County.

Assessor's Parcel No: 372-521-31

**EXHIBIT "2"**

File No: 124070576

# SCHEDULE B

At the date hereof Exceptions to coverage in addition to the printed exceptions and exclusions in said policy form would be as follows:

A.   Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2024-2025.

B.   Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

| | |
|---|---|
| Tax Identification No.: | 372-521-31 |
| Fiscal Year: | 2023 - 2024 |
| 1st Installment: | $15,762.29, Unpaid (Delinquent after December 10) |
| Penalty: | $1,576.22 |
| 2nd Installment: | $15,762.29, Unpaid (Delinquent after April 10) |
| Penalty and Cost: | $1,599.22 |
| Homeowners Exemption: | Not Set Out |
| Code Area: | 24-000 |
| Land: | $1,209,837.00 |
| Improvements: | $1,722,663.00 |

C.   Said property has been declared tax-defaulted for non-payment of delinquent regular taxes for the fiscal year 2022 - 2023.

Amount to redeem by March 31, 2024 for the above-stated year (and subsequent years, if any) is $19,139.40.

Amount to redeem by April 30, 2024 for the above-stated year (and subsequent years, if any) is $19,371.40.

Amount to redeem by May 31, 2024 for the above-stated year (and subsequent years, if any) is $19,603.40.

D.   The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A; or as a result of changes in ownership or new construction occurring prior to date of policy.

1.   Water rights, claims or title to water, whether or not disclosed by the public records.

2.   A document subject to all the terms, provisions and conditions therein contained.

| | |
|---|---|
| Entitled: | Agreement |
| Dated: | November 6, 1937 |
| By and between: | J. L. Clayton and Southern Counties Gas Company, a Corporation |
| Recorded: | November 23, 1937 in Book 915 Page 266 of Official Records |

Reference is made to said document for full particulars.

3.   An easement for the purpose shown below and rights incidental thereto as set forth in a document

**EXHIBIT "2"**

Granted to:                        Southern California Edison Company, a Corporation
Purpose:                           Public utility purposes and incidental purposes
Recorded:                          August 3, 1984 as Instrument No. 84-322271 of Official Records
Affects:                           Portion of said land

Reference is hereby made to said document for full particulars.

4.   An easement for the purpose shown below and rights incidental thereto as set forth in a document
     Granted to:                   Southern California Edison Company, a Corporation
     Purpose:                      Public utility purposes, ingress and egress
     Recorded:                     June 28, 1988 as Instrument No. 88-308119 of Official Records
     Affects:                      Portion of said land

Reference is hereby made to said document for full particulars.

5.   A deed of trust to secure an indebtedness in the amount shown below,

     Amount:                       $2,012,500.00
     Dated:                        December 8, 2021
     Trustor/Grantor:              Tuong Minh Nguyen, a married man as his sole and separate
                                   property
     Trustee:                      Orange Coast Title Company of Southern California – Orange
                                   County Division
     Beneficiary:                  CAMANNA LLC, a California limited liability company
     Loan No.:                     Not Set Out
     Recording Date:               December 20, 2021
     Recording No:                 as Instrument No. 2021-761010 of Official Records

     A substitution of trustee under said deed of trust which names, as the substituted trustee, the
     following

     Trustee:                      C&H Trust Deed Service
     Recording Date:               March 3, 2023
     Recording No:                 as Instrument No. 2023-49681 of Official Records

     A notice of default under the terms of said trust deed

     Executed by:                  C&H Trust Deed Service
     Recording Date:               June 30, 2023
     Recording No:                 as Instrument No. 2023-156884 of Official Records

     A notice of trustee's sale under said deed of trust

     Executed by:                  C&H Trust Deed Service
     Time and Place of Sale:       October 27, 2023 at 10:00 AM, on the front steps to the entrance
                                   of the Orange Civic Center located at 300 East Chapman, Orange,
                                   California
     Recording Date:               September 29, 2023
     Recording No:                 as Instrument No. 2023-237476 of Official Records

**EXHIBIT "2"**

6.   A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $200,000.00 |
| Dated: | October 17, 2022 |
| Trustor/Grantor: | Villa Park Mansion LLC, a California limited liability company |
| Trustee: | Green Lotus Group, LLC, a California limited liability company |
| Beneficiary: | Green Lotus Group, LLC, a California limited liability company |
| Loan No.: | Not Set Out |
| Recording Date: | October 26, 2022 |
| Recording No: | as Instrument No. 2022-345783 of Official Records |

7.   A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $200,000.00 |
| Dated: | December 15, 2022 |
| Trustor/Grantor: | Tuong Minh Nguyen, a married man as his sole and separate property |
| Trustee: | TICOR Title Company of California, a California Corporation |
| Beneficiary: | PDA Inc., a California Corporation |
| Loan No.: | Not Set Out |
| Recording Date: | December 19, 2022 |
| Recording No: | as Instrument No. 2022-412088 of Official Records |
| | |
| And re-recorded: | February 16, 2023 as Instrument No. 2023-35870 of Official Records |

8.   A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $700,000.00 |
| Dated: | July 5, 2022 |
| Trustor/Grantor: | Villa Park Mansion LLC, a California limited liability company |
| Trustee: | Provident Title Company |
| Beneficiary: | Green Lotus Group, LLC, a California limited liability company |
| Loan No.: | Not Set Out |
| Recording Date: | July 7, 2022 |
| Recording No: | as Instrument No. 2022-239097 of Official Records |

By the provision of an agreement:

| | |
|---|---|
| Dated: | December 16, 2022 |
| Executed by: | Villa Park Mansion LLC, a California limited liability company; Green Lotus Group, LLC, a California limited liability company |
| Recorded: | December 19, 2022 as Instrument No. 2022-412089 of Official Records |

Said instrument was made subordinate to the lien of the document or interest shown as Item No. 6 and 7 of Schedule B.

9.   A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $450,000.00 |
| Dated: | June 3, 2022 |
| Trustor/Grantor: | Tuong Minh Nguyen, CEO of Villa Park Mansion, LLC |
| Trustee: | Thanh Binh Tran, a single man |
| Beneficiary: | Thanh Binh Tran, a single man |
| Loan No.: | Not Set Out |
| Recording Date: | October 31, 2023 |
| Recording No: | as Instrument No. 2023-265666 of Official Records |

**EXHIBIT "2"**

If the above-mentioned deed of trust has been paid, or will be paid prior to or at close of escrow, this Company will require the original note, deed of trust and signed request for reconveyance, or the executed full reconveyance for said deed of trust, prior to closing.  Any demand(s) for payoff and/or request(s) for full/partial reconveyance, must be executed by all beneficiaries or their successors in interest and their spouses, if married.  In the event said beneficiaries/assignees are represented by an agent, proof of agency must be submitted along with the demand(s) and/or request(s) for full/partial reconveyance.  To avoid delays please submit all documents to the Company at least one week prior to closing.  If you cannot obtain these documents, please contact us.

**END OF SCHEDULE B EXCEPTIONS**

**PLEASE REFER TO THE "NOTES AND REQUIREMENTS SECTION" WHICH FOLLOWS FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION**

**EXHIBIT "2"**

# REQUIREMENTS SECTION:

Req. No. 1:    In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

Party(s): All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE:   The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

Req. No. 2:    The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

Limited Liability Company:      Villa Park Mansion LLC

a)       A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member

b)       If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps

c)       If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member

d)       A current dated certificate of good standing from the proper governmental authority of the state in which the entity was created

e)       If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

f)       If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

g)       Each member and manager of the LLC without an Operating Agreement must executed in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

**EXHIBIT "2"**

File No: 124070576

# INFORMATIONAL NOTES SECTION

Note No. 1:   The information on the attached plat is provided for your convenience as a guide to the general location of the subject property.  The accuracy of this plat is not guaranteed, nor is it a part of any policy, report or guarantee to which it may be attached.

Note No. 2:   California insurance code section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds deposited with the company by wire transfer may be disbursed upon receipt. Funds deposited with the company via cashier's check or teller's check drawn on a California based bank may be disbursed on the next business day after the day of deposit. If funds are deposited with the company by other methods, recording and/or disbursement may be delayed.  All escrow and sub-escrow funds received by the company will be deposited with other escrow funds in one or more non-interest bearing escrow accounts of the company in a financial institution selected by the company. The company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with such financial institution, and the company shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by the company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the company or its parent company and earnings on investments made with the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the company for its services in connection with the escrow or sub-escrow.

**For wiring Instructions please contact your Title Officer or Title Company Escrow officer.**

Note No. 3:   Lawyers Title is a division of Commonwealth Land Title Insurance Company.  The insurer in policies of title insurance, when issued in this transaction, will be Commonwealth Land Title Insurance Company.

Note No. 4:   Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

Note No. 5:   Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax.  If a governmental agency is a party to the document, the form will not be required. DDT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

Note No. 6:   Due to the special requirements of SB 50 (California Public Resources Code Section 8560 et seq.), any transaction that includes the conveyance of title by an agency of the United States must be approved in advance by the Company's State Counsel, Regional Counsel, or one of their designees.

Note No. 7:   None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an ALTA Loan Policy, when issued.

Note No. 8:   The following information will be included in the CLTA Form 116 or ALTA Form 22-06 Endorsement to be issued pursuant to this order:

There is located on said Land:    A single family residence
Known as:        18462 Villa Drive, Villa Park, California

Note No. 9:   The Company requires current beneficiary demands prior to closing. If the demand is expired and a current demand cannot be obtained, our requirements will be as follows:

a)   If the Company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. This hold will be in addition to the verbal hold the lender may have stipulated.

b)   If the Company cannot obtain a verbal update on the demand, we will either pay off the expired demand or wait for the amended demand, at our discretion.

CLTA Preliminary Report Form – Modified (11-17-06)          **EXHIBIT "2"**

File No:  124070576

c)      All payoff figures are verified at closing. If the customer's last payment was made within 15 days of closing, our Payoff Department may hold one month's payment to insure the check has cleared the bank (unless a copy of the cancelled check is provided, in which case there will be no hold).

Note No. 10:    The only conveyance(s) affecting said Land, which recorded within 24 months of the date of this report, are as follows:

Grantor:        Tuong Minh Nguyen, a married man as his sole and separate property
Grantee:        Villa Park Mansion LLC, a California limited liability company
Recording Date: April 4, 2022
Recording No:   as Instrument No. 2022-129404 of Official Records

Note No. 11:    The only conveyance(s) affecting said Land, which recorded within 24 months of the date of this report, are as follows:

Grantor:        Villa Park Mansion LLC, a California limited liability company
Grantee:        Tuong Minh Nguyen, a married man as his sole and separate property
Recording Date: February 16, 2023
Recording No:   as Instrument No. 2023-35869 of Official Records

Note No. 12:    The only conveyance(s) affecting said Land, which recorded within 24 months of the date of this report, are as follows:

Grantor:        Tuong Minh Nguyen, a married man as his sole and separate property
Grantee:        Villa Park Mansion LLC, a California limited liability company
Recording Date: February 16, 2023
Recording No:   as Instrument No. 2023-35871 of Official Records

Note No. 13:    The Company and its policy issuing agents are required by Federal law to collect additional information about certain transactions in specified geographic areas in accordance with the Bank Secrecy Act.  If this transaction is required to be reported under a Geographic Targeting Order issued by FinCEN, the Company or its policy issuing agent must be supplied with a completed ALTA Information Collection Form ("ICF") prior to closing the transaction contemplated herein.

Processor:  RT
Date Typed: February 28, 2024

**EXHIBIT "2"**

File No:  124070576

## ATTACHMENT ONE

(Rev 11-04-22 (CA))

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990 (11-09-18)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

## EXHIBIT "2"

1.    Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.    Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.    Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.    Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.    Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II

(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)]


**CALIFORNIA LAND TITLE ASSOCIATION**
**STANDARD COVERAGE OWNER'S POLICY (02-04-22)**

**EXCLUSIONS FROM COVERAGE**

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    a.    any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i.      the occupancy, use, or enjoyment of the Land;
        ii.     the character, dimensions, or location of any improvement on the Land;
        iii.    the subdivision of land; or
        iv.    environmental remediation or protection.
      b.    any governmental forfeiture, police, regulatory, or national security power.
      c.    the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
      Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.

2.    Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.

3.    Any defect, lien, encumbrance, adverse claim, or other matter:
      a.    created, suffered, assumed, or agreed to by the Insured Claimant;
      b.    not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
      c.    resulting in no loss or damage to the Insured Claimant;
      d.    attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
      e.    resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:

    a.      fraudulent conveyance or fraudulent transfer;
    b.      voidable transfer under the Uniform Voidable Transactions Act; or
    c.      preferential transfer:
        i.      to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.      for any other reason not stated in Covered Risk 9.b.

5.      Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.

6.      Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.

7.      Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

### PART I

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

**EXHIBIT "2"**

File No:  124070576

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (07-01-2021)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.
   a.     any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
          i.     the occupancy, use, or enjoyment of the Land;
          ii.    the character, dimensions, or location of any improvement on the Land;
          iii.   the subdivision of land; or
          iv.   environmental remediation or protection.
   b.     any governmental forfeiture, police, or regulatory, or national security power.
   c.     the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.

2.    Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.

3.    Any defect, lien, encumbrance, adverse claim, or other matter:
   a.     created, suffered, assumed, or agreed to by You;
   b.     not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
   c.     resulting in no loss or damage to You;
   d.     attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
   e.     resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.

4.    Lack of a right:
   a.     to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
   b.     in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.

5.    The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.

6.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
   a.     fraudulent conveyance or fraudulent transfer;
   b.     voidable transfer under the Uniform Voidable Transactions Act; or
   c.     preferential transfer:
          i.     to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
          ii.    for any other reason not stated in Covered Risk 30.

7.    Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

8.    Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.

9.    Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.

File No: 124070576

10.   Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

·   For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00<br>(whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00<br>(whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00<br>(whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00<br>(whichever is less) | $5,000.00 |

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.   Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

   a.      building;
   b.      zoning;
   c.      land use;
   d.      improvements on the Land;
   e.      land division; and
   f.      environmental protection.

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.   The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.   The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4.   Risks:

   a.      that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;

**EXHIBIT "2"**

File No: 124070576

    b.     that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

    c.     that result in no loss to You; or

    d.     that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.     Failure to pay value for Your Title.

6.     Lack of a right:

    a.     to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and

    b.     in streets, alleys, or waterways that touch the Land.

This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.     The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.     Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.     Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

    ·     For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## ALTA OWNER'S POLICY (07-01-2021)

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    a.     any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:

        i.     the occupancy, use, or enjoyment of the Land;

        ii.    the character, dimensions, or location of any improvement on the Land;

      iii.     the subdivision of land; or

      iv.     environmental remediation or protection.

  b.    any governmental forfeiture, police, regulatory, or national security power.

  c.    the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.

Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.

2.     Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.

3.     Any defect, lien, encumbrance, adverse claim, or other matter:

  a.    created, suffered, assumed, or agreed to by the Insured Claimant;

  b.    not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

  c.    resulting in no loss or damage to the Insured Claimant;

  d.    attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or

  e.    resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4.     Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:

  a.    fraudulent conveyance or fraudulent transfer;

  b.    voidable transfer under the Uniform Voidable Transactions Act; or

  c.    preferential transfer:

      i.     to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or

      ii.     for any other reason not stated in Covered Risk 9.b.

5.     Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.

6.     Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.

7.     Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**EXCEPTIONS FROM COVERAGE**

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1.     (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.    Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.

3.    Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4.    Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.    Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7.    Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B

## 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a)    Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i)    the occupancy, use, or enjoyment of the Land;

(ii)    the character, dimensions, or location of any improvement erected on the Land;

(iii)    the subdivision of land; or

(iv)    environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b)    Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.    Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims, or other matters

(a)    created, suffered, assumed, or agreed to by the Insured Claimant;

(b)    not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c)    resulting in no loss or damage to the Insured Claimant;

**EXHIBIT "2"**

File No: 124070576

(d)     attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

(e)     resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.     Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

     (a)     a fraudulent conveyance or fraudulent transfer; or

     (b)     a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.     Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1.     (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.     Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3.     Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4.     Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5.     (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.     Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7.     Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

**Notice of Available Discounts**

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.   As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.   These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company.  The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Company** | **Underwritten by FNF Underwriters** |
|---|---|
| CTC – Chicago Title Company | CTIC – Chicago Title Insurance Company |
| CLTC - Commonwealth Land Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

**Available Discounts**

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

**EXHIBIT "2"**

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened.** DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

| *Federal Bureau of Investigation:* | *Internet Crime Complaint Center:* |
|:---:|:---:|
| *http://www.fbi.gov* | *http://www.ic3.gov* |

**EXHIBIT "2"**

# FIDELITY NATIONAL FINANCIAL
## PRIVACY NOTICE

Effective December 1, 2023

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

## Collection of Personal Information
FNF may collect the following categories of Personal Information:
• contact information (*e.g.*, name, address, phone number, email address);
• demographic information (*e.g.*, date of birth, gender, marital status);
• identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
• financial account information (*e.g.* loan or bank account information); and
• other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
• information we receive from you or your agent;
• information about your transactions with FNF, our affiliates, or others; and
• information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

## Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
• Internet Protocol (IP) address and operating system;
• browser version, language, and type;
• domain name system requests; and
• browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

## Other Online Specifics
Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites. FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

## Use of Personal Information
FNF uses Personal Information for these main purposes:
• To provide products and services to you or in connection with a transaction involving you.
• To improve our products and services.

**EXHIBIT "2"**

- To communicate with you about our affiliates' and others' products and services, jointly or independently.
- To provide reviews and testimonials about our services, with your consent.

## When Information Is Disclosed

We may disclose your Personal Information and Browsing Information in the following circumstances:

- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to affiliated or nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;
- to affiliated or nonaffiliated third parties with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above-described proceedings.

## Security of Your Information

We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

## Choices With Your Information

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Connecticut Residents:  For additional information about your Connecticut consumer privacy rights, or to make a consumer privacy request, or to appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Colorado Residents: For additional information about your Colorado consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Nevada Residents: We are providing this notice pursuant to state law.  You may be placed on our internal Do Not Call List by calling FNF Privacy at (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. For further information concerning Nevada's telephone solicitation law, you may contact: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: aginquiries@ag.state.nv.us.

For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Utah Residents:  For additional information about your Utah consumer privacy rights, or to make a consumer privacy request, please call (888) 714-2710.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health

information to nonaffiliated third parties to market to you or others as permitted by Vermont law, unless you authorize us to make those disclosures.

For Virginia Residents: For additional information about your Virginia consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

## Information From Children
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

## Your Consent to this Privacy Notice; Notice Changes
By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

## Accessing and Correcting Information; Contact Us
If you have questions or would like to correct your Personal Information, visit FNF's Privacy Inquiry Website or contact us by phone at (888) 714-2710, by email at privacy@fnf.com, or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

Copyright © 2023.                                  Fidelity National Financial, Inc. All Rights
Reserved.

**EXHIBIT "2"**

**FIDELITY NATIONAL FINANCIAL**
**CALIFORNIA PRIVACY NOTICE**

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect  and are committed to protecting your privacy. This California Privacy Notice explains how we collect, use, and disclose  Personal Information, when and to whom we disclose such information, and the rights you, as a California resident ("Consumer"), have regarding your Personal Information ("California Privacy Rights"). "Personal Information" means information that identifies, relates to, describes, and is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household. If FNF has collected, used, or disclosed your Personal Information in relation to a job application or employment, independent contractor, officer, owner, or director relationship with FNF, FNF's practices are discussed in our Notice at Collection for Prospective Employees, available at **Prospective California Employees**.

Some subsidiaries maintain  separate California Privacy Notices or privacy statements. If a subsidiary has a separate California Privacy Notice, it will  be available on the subsidiary's website, and this California Privacy Notice does not apply.

**Collection of categories of Personal Information:**

In the preceding 12 months FNF has collected, and will continue to collect, the following categories of                                                                                                                                 Personal Information from you:

- Identifiers such as name, address, telephone number, IP address, email address, account name, social security
  number, driver's license number, state identification card, passport number, financial information, date of birth, or other similar identifiers;
- Characteristics of protected classifications under California or Federal law;
- Commercial information, including records of personal property, products or services purchased, or other
  purchasing or consuming histories;
- Internet or other electronic network activity information including, but not limited to browsing history on FNF websites and information regarding a Consumer's interaction with an FNF website;
- Geolocation data;
- Professional or employment information;
- Education Information.

**This Personal Information is collected from the following sources:**

- Information we receive from you on applications or other forms;
- Information about your transactions with FNF, our affiliates, or others;
- Information we receive from consumer reporting agencies and/or governmental entities, either directly from these
  entities, or from internet service providers, data analytics providers, and social networks;
- Information from the use of our websites and mobile applications;
- Information we receive directly from you related to doing business with us.

**This Personal Information is collected for the following business purposes:**

- To provide products and services to you or in connection with a transaction involving you;
- To perform a contract between FNF and the Consumer;
- To improve our products and services;
- To comply with legal obligations;
- To protect against fraudulent or illegal activity;
- To communicate with you about FNF or our affiliates;
- To maintain an account with FNF or our affiliates;
- To provide, support, personalize, and develop our websites, products, and services;

**EXHIBIT "2"**

- To provide reviews and testimonials about services, with your consent;
- To directly market our products to consumers;
- As described to you when collecting your Personal Information or as otherwise set forth in the California
  Consumer Privacy Act.

## Disclosures of Personal Information for a business purpose:

In the preceding 12 months FNF has disclosed, and will continue to disclose, the categories of Personal Information listed  above for a business purpose. We may disclose Personal Information for a business purpose to the following categories of  third parties:

- FNF affiliates and subsidiaries;
- Non-affiliated third parties, with your prior consent;
- Businesses in connection with the sale or other disposition of all or part of the FNF business and/or assets;
- Service Providers and non-affiliated third parties such as internet service providers, data analytics providers, and social networks;
- Law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

## Sale of Personal Information:
In the preceding 12 months, FNF has not sold or shared Personal Information. FNF does not sell or share Personal Information.

## Retention Periods:
Due to the breadth and variety of data collected by FNF, it is not possible for us to provide you with a comprehensive list of timeframes during which we retain each category of Personal Information. FNF retains categories of information as reasonably necessary to satisfy the purpose for which we collect the information. This time period varies depending on the purpose for which we collected the information, the nature and frequency of our interactions and relationship with you, whether we have a legal basis to continue retaining the information, industry practices, the value and sensitivity of the information, and state and federal recordkeeping requirements.

## Personal Information of minors:
FNF does not knowingly collect the Personal Information of minors. FNF does not sell or share the information of consumers under 16 years of age.

## Sensitive Personal Information:
FNF does not use or disclose sensitive Personal Information for any purposes other than those specified in the California Consumer Privacy Act.

## Right to know:
Consumers have a right to know about Personal Information collected, used, disclosed, shared, or sold, including the categories of such Personal Information, as well as the purpose for such collection, use, disclosure, sharing, or selling, categories of third parties to whom Personal Information is disclosed, shared or sold, and the specific pieces of Personal Information collected about the consumer.  Consumers have the right  to request FNF disclose what Personal Information it collected, used, and disclosed in the past 12 months, or since January 1, 2022.

## Right to request deletion:
Consumers have a right to request the deletion of their Personal Information, subject to certain exceptions.

## Right to Correct:
Consumers have the right to correct inaccurate Personal Information.

## Right to non-discrimination:
Consumers have a right not to be discriminated against because of exercising their consumer privacy rights. We will not
discriminate against Consumers for exercising any of their California Privacy Rights.

**EXHIBIT "2"**

**To exercise any of your California Privacy Rights, or if acting as an authorized agent on behalf of another individual, please visit _California Privacy Request,_ call us Toll Free at 888-413-1748, or write to the address at the end of this notice.**

Upon making a California Privacy Request, FNF will verify the consumer's identity by requiring an account, loan, escrow  number, or other identifying information from the consumer.

The above-rights are subject to any applicable rights and obligations including both Federal and California                                                                      exemptions rendering FNF, or Personal Information collected by FNF, exempt from certain CCPA requirements. A Consumer may use an Authorized Agent to submit any CCPA request. Authorized agents' requests will be processed like any other CCPA request, but FNF will also require the Consumer provide the agent's written permission to make the request and verify his or her identity with FNF.

**FNF website services for mortgage loans:**
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer  information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both  this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice describing  the categories, sources, and uses of your Personal Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Information. FNF does not share Information  collected through the Service Websites, except (1) as required or authorized by contract with the mortgage loan servicer or  lender, or (2) as required by law or in the good-faith belief that such disclosure is necessary to comply with a legal process  or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**California Privacy Notice – Effective Date:**
This California Privacy Notice was last updated on December 1, 2023.

**Contact for more information:**
For questions or concerns about FNF's California Privacy Notice and privacy practices, or to exercise any                                                    of                                                    your California Privacy Rights, please visit _California Privacy,_ call Toll Free 888-413-1748, or contact us by mail at the below address.

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

Copyright © 2023.                              Fidelity National Financial, Inc. All Rights Reserved.

**EXHIBIT "2"**



**EXHIBIT "2"**

# Exhibit 3

# Purchase Agreement

text her

## CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, 12/21)

CALIFORNIA ASSOCIATION OF REALTORS®

Date Prepared: Feb 28, 2024

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** Hao Bui and Thuy Nguyen ("Buyer").
   B. **THE PROPERTY** to be acquired is 18462 Villa Drive ..... , situated in Villa Park ... (City), Orange ... (County), California, 92861-2812 (Zip Code), Assessor's Parcel No(s). 372-521-31 ("Property").
      **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   C. **THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.
2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
      **Seller's Brokerage Firm** Berkshire Hathaway HomeServices CA Properties  License Number 01317331
      Is the broker of (check one): ☐ the Seller; or ☐ both the Buyer and Seller (Dual Agent).
      **Seller's Agent** Clarence Yoshikane  License Number 00801398
      Is (check one): ☐ the Seller's Agent. (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
      **Buyer's Brokerage Firm** Ana Real Estate  License Number 00847066
      Is the broker of (check one): ☒ the Buyer; or ☐ both the Buyer and Seller (Dual Agent).
      **Buyer's Agent** Tien Hung Nguyen  License Number 02065064
      Is (check one): ☒ the Buyer's Agent. (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
   C. ☐ More than one Brokerage represents ☐ Seller, ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent (C.A.R. Form PRBS).
3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | Purchase Price | $ 3,410,000 | ☐ All Cash |
| B | | Close of Escrow (COE) | ☒ within 30-days from Court Confirmation Hearing ☐ | |
| ~~C~~ | ~~32A~~ | ~~Expiration of Offer~~ | ~~3 calendar days after all Buyer Signature(s)~~ ~~or~~ ~~(date),~~ ~~at 5PM or ☐ AM/☐ PM~~ | |
| D(1) | 5A(1) | Initial Deposit Amount | $ 110,000 ( % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or ___ ) business days after Acceptance by wire transfer OR ☐ |
| ~~D(2)~~ | ~~5A(2)~~ | ~~Increased Deposit~~ ~~(Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.)~~ | ~~$~~ ~~( % of purchase price)~~ ~~(% number above is for calculation purposes and is not a contractual term)~~ | ~~Upon removal of all contingencies~~ ~~OR ☐~~ ~~(date)~~ ~~OR ☐~~ |
| ~~E(1)~~ | ~~5C(1)~~ | ~~Loan Amount(s):        First~~ ~~Interest Rate~~ ~~Points~~ | ~~$        ( % of purchase price)~~ ~~Fixed rate or ☐ Initial adjustable rate not to exceed ____ %~~ ~~Buyer to pay zero points or up to ____ % of the loan amount~~ | ~~Conventional or, if checked,~~ ~~☐ FHA ☐ VA~~ ~~(CAR Forms FVAC, HID attached)~~ ~~☐ Seller Financing~~ ~~☐ Other:~~ |
| | | ~~If FHA or VA checked, Deliver list of lender required repairs~~ | ~~17 (or ____ ) Days after Acceptance~~ | |
| ~~E(2)~~ | ~~5C(2)~~ | ~~Additional Financed Amount~~ ~~Interest Rate~~ ~~Points~~ | ~~$        ( % of purchase price)~~ ~~Fixed rate or ☐ Initial adjustable rate not to exceed ____ %~~ ~~Buyer to pay zero points or up to ____ % of the loan amount~~ | ~~Conventional or, if checked,~~ ~~☐ Seller Financing~~ ~~☐ Other:~~ |
| E(3) | 7A | Occupancy Type | Primary, or if checked, ☐ Secondary ☐ Investment | |
| F | 5D | Balance of Down Payment | $ 3,300,000 | |
| | | PURCHASE PRICE TOTAL | $ 3,410,000 | |

© 2021, California Association of REALTORS®, Inc.

RPA 12/21 (PAGE 1 OF 16)

Buyer's Initials HB / TN     Seller's Initials ____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

BHHS California Properties - Newport Beach, 1400 Newport Center Dr Ste 200 Newport Beach CA 92660     Phone: (555)555-5555     Fax: 9496407429     BK Purchase
Jennifer Toyama     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

## EXHIBIT "3"

Property Address: _____ **18462 Villa Dr, Villa Park, CA 92861-2812** _____ Date: Feb 28, 2024

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | Seller Credit, if any, to Buyer | ☐ $_____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: _____ |
| G(2) | | ADDITIONAL FINANCE TERMS: _____ | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| I | | Intentionally Left Blank | | |
| J | 16 | Final Verification of Condition | 5 (or _____ ) Days prior to COE | |
| K | 23 | Assignment Request | 17 (or _____ ) Days after Acceptance | |
| L | 8 | CONTINGENCIES | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
| L(1) | 8A | Loan(s) | 17 (or _____ ) Days after Acceptance | ☐ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or $ _____ | 17 (or _____ ) Days after Acceptance | ☐ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or _____ ) Days after Acceptance | |
| | | Informational Access to Property Buyer's right to access the Property for informational purposes is NOT a contingency, does NOT create cancellation rights, and applies even if contingencies are removed. | 17 (or _____ ) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a |
| L(4) | 8D, 14A | Review of Seller Documents | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | Contingency Removal (C.A.R. Form CR) and checking the applicable |
| L(5) | 8E, 13A | Preliminary ("Title") Report | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | box therein. Removal or Waiver at time of offer is against Agent advice. |
| L(6) | 8F, 11K | Common Interest Disclosures required by Civil Code § 4525 or this Agreement | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | See paragraph 8H. ☐ CR attached |
| L(7) | 8G, 9B(6) | Review of leased or liened items (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(8) | 8J | Sale of Buyer's Property Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| M | | Possession | Time for Performance | Additional Terms |
| M(1) | | Time of Possession | Upon notice of recordation, OR ☐ 6 PM or ☐ _____ ☐ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | Seller Occupied or Vacant units | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | | Tenant Occupied units | See Tenant Occupied Property Addendum (C.A.R. form TOPA) | If tenant occupied ☐ TOPA or ☐ Other, attached |
| N | | Documents/Fees/Compliance | Time for Performance | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____ ) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____ ) Days after receipt | |
| N(3) | 11K(2) | Time to pay fees for ordering HOA Documents | 3 (or _____ ) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____ ) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |
| O | | Intentionally Left Blank | | |

Buyer's Initials  HB / TN   Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    BK Purchase

**EXHIBIT "3"**

Property Address: ....., ...,  ... **18462 Villa Dr, Villa Park, CA 92861-2812**    Date: Feb 28, 2024

| P | Items Included and Excluded |
|---|---|

**P(1)** | 9 | **Items Included - All items specified in Paragraph 9B are included and the following, if checked:**

- [X] Stove(s), oven(s), stove/oven combo(s);
- [X] Refrigerator(s);
- [ ] Wine Refrigerator(s);
- [ ] Washer(s);
- [ ] Dryer(s);
- [X] Dishwasher(s);
- [X] Microwave(s);
- [ ] ~~Video doorbell(s);~~
- [ ] ~~Security camera equipment;~~
- [ ] ~~Security system(s)/alarm(s), other than separate video doorbell and camera equipment;~~
- [ ] ~~Smart home control devices;~~
- [ ] ~~Wall mounted brackets for video or audio equipment;~~
- [ ] ~~Above-ground pool(s) / spa(s);~~
- [X] Bathroom mirrors, unless excluded below;
- [ ] ~~Electric car charging systems and stations;~~
- [X] Potted trees/shrubs;

**Additional Items included:**

[X]  Safe box in garage  _____

[ ] _____    [ ] _____

**P(2)** | 9 | **Excluded Items:** _____ ; _____ ;

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | Paragraph # | Item Description | Who Pays (If Both is checked, cost to be split equally unless Otherwise Agreed) | Additional Terms |
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | [ ] Buyer [X] Seller [ ] Both _____ [X] Provided by: **MyNHD.com** | [ ] ~~Environmental~~ [ ] ~~Other~~ _____ |
| ~~Q(2)~~ | | ~~_____ Report~~ | ~~[ ] Buyer [ ] Seller [ ] Both~~ | |
| ~~Q(3)~~ | | ~~_____ Report~~ | ~~[ ] Buyer [ ] Seller [ ] Both~~ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | [X] Buyer [ ] Seller [ ] Both | |
| Q(5) | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | [X] Buyer [ ] Seller [ ] Both | |
| Q(6) | 10B(2)(A) | Government Required Point of Sale **corrective/remedial actions** | [X] Buyer [ ] Seller [ ] Both | |
| Q(7) | 19B | Escrow Fees | [ ] Buyer [ ] Seller [ ] Both [X] Each to pay their own fees | Escrow Holder: **A & A Escrow** |
| Q(8) | 13 | Owner's title insurance policy | [ ] Buyer [X] Seller [ ] Both | Title Company (If different from Escrow Holder): **Lawyers Title Company** |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | [X] Buyer [ ] Seller [ ] Both | |
| Q(11) | | City transfer tax, fees | [ ] Buyer [X] Seller [ ] Both | |
| Q(12) | 11K(2) | HOA fee for preparing disclosures | ~~Seller~~  Buyer | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | [ ] Buyer [ ] Seller [X] Both **Split 50/50** | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, [X] Buyer [ ] Both | |
| ~~Q(16)~~ | | ~~_____ fees or costs~~ | ~~[ ] Buyer [ ] Seller [ ] Both~~ | |
| ~~Q(17)~~ | | ~~_____ fees or costs~~ | ~~[ ] Buyer [ ] Seller [ ] Both~~ | |
| Q(18) | 10C | Home warranty plan: _____ [ ] Buyer waives home warranty plan Issued by: _____ | [ ] Buyer [ ] Seller [ ] Both | Cost not to exceed $ _____ |

| R | **OTHER TERMS:** PROPERTY TO BE SOLD IN "AS-IS", "WHERE-IS" CONDITION WITH ALL FAULTS AND WITHOUT ANY WARRANTIES, EXPRESSED OR IMPLIED.  PEST CONTROL/ TERMITE INSPECTION REPORT AND ANY CORRECTIVE WORK WILL NOT BE PROVIDED, COMPLETED BY NOR PAID FOR BY SELLER.  TRUSTEE'S ADDENDUM TO EXCLUSIVE AND RIGHT TO SELL IS INCORPORATED HEREIN IN ITS ENTIRETY. |
|---|---|

**RPA 12/21 (PAGE 3 OF 16)**    Buyer's Initials  HB  /  TN      Seller's Initials  _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**

**EXHIBIT "3"**

Property Address: ...., ..., ...                                                          Date: ~~Type here~~ Feb 28, 2024

**4.  PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)
  **A.  PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
   ☐ ~~Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)~~
   ☐ ~~Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)~~
   ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
   ☐ ~~Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)~~
   ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
   ☐ Other

  **B.  OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
   ☐ Addendum #_____ (C.A.R. Form ADM)        ☐ ~~Short Sale Addendum (C.A.R. Form SSA)~~
   ☐ ~~Back Up Offer Addendum (C.A.R. Form BUO)~~        ☐ ~~Court Confirmation Addendum (C.A.R. Form CCA)~~
   ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
   ☐ ~~Buyer Intent to Exchange Addendum (C.A.R. Form BXA)~~        ☐ ~~Seller Intent to Exchange Addendum (C.A.R. Form SXA)~~
   ☐ Other_____        ☐ Other_____

  **C.  BUYER AND SELLER ADVISORIES:** (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)
   ☒ ~~Buyer's Investigation Advisory (C.A.R. Form BIA)~~        ☒ ~~Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)~~
   ☒ ~~Wire Fraud Advisory (C.A.R. Form WFA)~~        ☒ ~~Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)~~
                                                                  (Parties may also receive a privacy disclosure from their own Agent.)
   ☐ ~~Wildfire Disaster Advisory (C.A.R. Form WFDA)~~        ☐ ~~Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)~~
   ☐ ~~Trust Advisory (C.A.R. Form TA)~~        ☐ ~~Short Sale Information and Advisory (C.A.R. Form SSIA)~~
   ☐ ~~REO Advisory (C.A.R. Form REO)~~        ☐ ~~Probate Advisory (C.A.R. Form PA)~~
                                                         ☐ Other_____

**5.  ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.
  **A.  DEPOSIT:**                                          **Listing Broker's Office**
   (1)  **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to ~~Escrow Holder~~. If a method other than wire transfer is specified in **paragraph 3D(1)** ~~and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.~~
   (2)  ~~**INCREASED DEPOSIT:** Increased deposit specified in paragraph 3D(2) is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.~~
   (3)  **RETENTION OF DEPOSIT:** Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. ~~Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.~~ ==Buyer agrees that if they backout prior to Court Hearing or are unable to Close Escrow they forfeit the Deposit.==

  **B.  ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

  **C.  LOAN(S):**
   (1)  **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.
   (2)  ~~**ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in paragraph 3E(2), that amount will provide for conventional financing UNLESS Seller Financing (C.A.R. Form SFA), or Other is checked in paragraph 3E(2).~~
   (3)  **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any other authorized loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
   (4)  **FHA/VA: If FHA or VA is checked in paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. ~~Buyer shall, within the time specified in paragraph 3E(1), Deliver to Seller written notice (C.A.R. Form RR or AEA) (i) of any lender requirements that Buyer requests Seller to pay for or otherwise correct or (ii) that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing,~~ Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

  **D.  BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F)** (including all-cash funds) to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

  **E.  LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** ~~the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit~~, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6.  ADDITIONAL FINANCING TERMS:**
  **A.  VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** shall be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.
  **B.  VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

RPA 12/21 (PAGE 4 OF 16)          Buyer's Initials **HB** / **TN**          ==Seller's Initials== _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

**EXHIBIT "3"**

Property Address: ....., ...., ....                                    18462 Villa Dr, Villa Park, CA 92861-2812                           Date:  Feb  28, 2024

C. **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

## 7. CLOSING AND POSSESSION:

A. **OCCUPANCY:** Buyer intends to occupy the Property as indicated in **paragraph 3E(3)**. Occupancy may impact available financing.

B. **CONDITION OF PROPERTY ON CLOSING:**

(1) Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. ~~Buyer, after first Delivering to Seller written notice to remove the items within 3 Days, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.~~

(2) **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

~~C. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW: If Seller has the right to remain in possession after Close Of Escrow pursuant to paragraph 3M(2) or as Otherwise Agreed, (i) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; (ii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan; and (iii) consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties.~~

D. **At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. ~~Agents cannot and will not determine the assignability of any warranties.~~

~~E. Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either paragraph 3P or paragraph 9. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.~~

## 8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:

A. **LOAN(S):**

~~(1) This Agreement is, unless otherwise specified in paragraph 3L(1) or an attached CR form, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s).~~ If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.

(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a condition for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. ~~Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.~~

(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, ~~unless Otherwise Agreed.~~

~~(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.~~

(5) NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller ~~may be~~ entitled to Buyer's deposit ~~or other legal remedies.~~

B. **APPRAISAL:**

~~(1) This Agreement is, unless otherwise specified in paragraph 3L(2) or an attached CR form, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in paragraph 3L(2), without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.~~

(2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller ~~may~~ be entitled to Buyer's deposit ~~or other legal remedies.~~

~~C. INVESTIGATION OF PROPERTY: This Agreement is, as specified in paragraph 3L(3), contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See paragraph 12.~~

~~D. REVIEW OF SELLER DOCUMENTS: This Agreement is, as specified in paragraph 3L(4), contingent upon Buyer's review of Seller's documents required in paragraph 14A.~~

RPA 12/21 (PAGE 5 OF 16)          Buyer's Initials   __HB__ / __TN__          Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com          BK Purchase

## EXHIBIT "3"

Property Address: 18462 Villa Dr, Villa Park, CA 92861-2812 ..... .... ...    Date: Feb 28, 2024

~~E. TITLE:~~

~~(1) This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.~~

~~(2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.~~

~~F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE): This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11K** ("CI Disclosures").~~

~~G. BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY: Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.~~

H. **REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

~~I. REMOVAL OF CONTINGENCY OR CANCELLATION:~~

~~(1) For any contingency specified in paragraph 3L or 8, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.~~

~~(2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after receipt of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.~~

~~(3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.~~

~~J. SALE OF BUYER'S PROPERTY: This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.~~

9. **ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

B. **ITEMS INCLUDED IN SALE:**

  (1) All EXISTING fixtures and fittings that are attached to the Property;

  (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window), attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
  **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.

  (3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.

  (4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.

  (5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Buyer is advised to change all passwords and ensure the security of any smart home features.

  (6) LEASED OR LIENED ITEMS AND SYSTEMS: Seller, ~~within the time specified in **paragraph 3N(1)**,~~ shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** ~~or otherwise included in the sale is leased,~~ or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, ~~and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning such item.~~

  (7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

---

RPA 12/21 (PAGE 6 OF 16)

Buyer's Initials  HB / TN      Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    BK Purchase

## EXHIBIT "3"

Property Address: ...., ...,  **18462 Villa Dr, Villa Park, CA 92861-2812**       Date: Feb 28 2024

**C. ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**
   **A. INSPECTIONS, REPORTS AND CERTIFICATES:** Paragraphs **3Q(1), (2), (3), and (5)** only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; ~~it does not determine who is to pay for any work recommended or identified in the Report. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).~~

   **B. GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**
   **(1) LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be ~~completed within the time specified in paragraph 3N(1) and~~ paid by the Party specified in **paragraph 3Q(4)**. If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow ~~or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.~~
   ~~**(2) POINT OF SALE REQUIREMENTS:**~~
   ~~**(A)** Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5)** and **3Q(6)**. Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall (i) directly pay to the vendor completing the repair or (ii) provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.~~
   ~~**(B)** Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government conducted or point of sale inspection report prepared pursuant to this Agreement in anticipation of this sale of the Property.~~
   ~~**(3) REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.~~
   **(4) INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

   **C. HOME WARRANTY:**
   **(1)** Buyer shall choose the coverages, regardless of any optional coverages indicated, of the home warranty plan and Buyer shall pay any cost of that plan, chosen by Buyer, ~~that exceeds the amount allocated to Seller in **paragraph 3Q(18)**~~. Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
   **(2) If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

~~**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**~~
   ~~**A. TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**~~
   ~~**(1)** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer, unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).~~
   ~~**(2)** The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID, Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Agent.~~
   ~~**(3)** Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: (i) unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; (ii) if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.~~
   ~~**(4)** In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.~~

RPA 12/21 (PAGE 7 OF 16)   Buyer's Initials  **HB** / **TN**   Seller's Initials ____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com       BK Purchase

**EXHIBIT "3"**

Property Address: ......, ...                                                      Date: Feb 28, 2024

**18462 Villa Dr, Villa Park, CA 92861-2812**

~~B. **LEAD DISCLOSURES:**~~

~~(1) Seller shall, within the time specified in **paragraph 3L(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead-Disclosures").~~

~~(2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.~~

~~C. **HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: (i) a home hardening disclosure required by law; and (ii) a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and (iii) a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).~~

~~D. **DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer (i) a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and (ii) an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).~~

~~E. **WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C,** and **11D** are prohibited by Law.~~

~~F. **RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(3)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11 A, B, C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.~~

G. **TERMINATION RIGHTS:**
   (1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C**, or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
   (2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

H. **WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

I. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

J. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

K. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
   (1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
   (2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the items.

L. **NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other area as required by Law and provide any other information required for those zones.

RPA 12/21 (PAGE 8 OF 16)              Buyer's Initials   HB  /  TN     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com              BK Purchase

## EXHIBIT "3"

Property Address: ...... ..... ...                                                                    Date:  Feb  28, 2024

18462 Villa Dr, Villa Park, CA 92861-2812

**M.** **KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact lender to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer shall, within the time specified in paragraph 3L(3), have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.** Buyer Investigations include, but are not limited to:

  (1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:

    (A) A general home inspection.

    (B) An inspection for lead-based paint and other lead-based paint hazards.

    (C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).

    (D) Any other specific inspections of the physical condition of the land and improvements.

  (2) All other Buyer Investigations, such as insurance, not specified above. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

  (3) A review of reports, disclosures or information prepared by or for Seller and Delivered to Buyer pursuant to **paragraphs 3**, **10, 11, and 14A.**

**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling though stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, (i) by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and (ii) by the time specified in **paragraph 3L(3)** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E.** **Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

**A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

**D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

RPA 12/21 (PAGE 9 OF 16)            Buyer's Initials   HB  /  TN    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com            JK Purchase

**EXHIBIT "3"**

Property Address: ..... ..... _____     Date: _Feb 28, 2024_

**18462 Villa Dr, Villa Park, CA 92861-2812**

G. Buyer shall receive a "ALTA/CLTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA/CLTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA/CLTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

~~14.  TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).~~

~~A.  SELLER DELIVERY OF DOCUMENTS: Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 13A, and 13D.**~~

~~B.  BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION~~
~~(1)  Buyer has the time specified in **paragraph 3** to: (i) perform Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11.**~~
~~(2)  Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.~~
~~(3)  Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, other than those in **paragraph 11A** or **11B**, is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G**.~~
~~(4)  Continuation of Contingency: Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to **paragraph 14C(1)**.~~

~~C.  SELLER RIGHT TO CANCEL:~~
~~(1)  SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES: If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.~~
~~(2)  SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS: Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; (ii) Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; (iii) Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; (v) Deliver a letter as required by **paragraph 6B**; (vi) In writing assume or accept leases or liens specified in **paragraph 8G**; (vii) Return Statutory and Other Disclosures as required by **paragraph 11F**; (viii) Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; (ix) Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 6A(2)** and **29**; (x) Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28**; or (xi) Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.~~
~~(3)  SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES: Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.~~

~~D.  BUYER RIGHT TO CANCEL:~~
~~(1)  BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES: If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.~~
~~(2)  BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS: If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.~~
~~(3)  BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES: Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.~~

RPA 12/21 (PAGE 10 OF 16)          Buyer's Initials  _HB_ / _TN_        <span style="color:goldenrod">Seller's Initials</span> _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          BK Purchase

# EXHIBIT "3"

Property Address: ....., ..., ...                                          Date: Feb 28, 2024

18462 Villa Dr, Villa Park, CA 92861-2812

~~E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 Days after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than 2 Days prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.~~

~~F. **EFFECT OF REMOVAL OF CONTINGENCIES:**~~

~~(1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for the non-delivery of any reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.~~

~~(2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: (i) satisfied themselves regarding such contingency; (ii) elected to proceed with the transaction; and (iii) given up any right to cancel this Agreement based on such contingency.~~

~~G. **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: (i) be Signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 Days after Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.~~

~~H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and return mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less (i) fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and (ii) any escrow cancellation fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.~~

~~15. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.~~

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to **paragraph 7B**; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS AND AGENTS:**

   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, ~~or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.~~

   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

RPA 12/21 (PAGE 11 OF 16)        Buyer's Initials  HB  /  TN        Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        BK Purchase

**EXHIBIT "3"**

Property Address: ...... .... ...    18462 Villa Dr, Villa Park, CA 92861-2812    Date: Feb 28, 202

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11K(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** or **paragraph C of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

B. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2)**. Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11**, or elsewhere in this Agreement.

C. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance**. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H**.

D. Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section**. If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

E. Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

F. Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2)**. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

G. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted, and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

~~22. ATTORNEY FEES AND COSTS: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 30A.~~

**23. ASSIGNMENT:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B**. Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K**, Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA).

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

A. **"Acceptance"** means the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

RPA 12/21 (PAGE 12 OF 16)    Buyer's Initials  HB / TN    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    JK Purchase

**EXHIBIT "3"**

Property Address: ....., ...   **18462 Villa Dr, Villa Park, CA 92861-2812**   Date: Feb 28, 2024

B. **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

C. **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

D. **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

E. **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

F. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

G. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

H. **"Copy"** means copy by any means including photocopy, facsimile and electronic.

I. **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or legal holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or legal holiday ("Allowable Performance Day"), and ending at 11:59 pm. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed, the COE shall occur on the next day the Recorder's office in that County is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

J. **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

K. **"Deliver", "Delivered"** or **"Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

L. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

M. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

N. **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33**.

O. **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

P. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

Q. **"Sign"** or **"Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

26. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. ~~The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.~~ Seller has the right to continue to offer the Property for sale and to accept any other offer ~~at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance.~~ The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

27. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

28. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

RPA 12/21 (PAGE 13 OF 16)          Buyer's Initials  HB / TN     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          BK Purchase

**EXHIBIT "3"**

Property Address: ....., ..., ...   **18462 Villa Dr, Villa Park, CA 92861-2812**   Date: Feb 28, 2024

**29. LIQUIDATED DAMAGES (By initialing in the space below, you are agreeing to Liquidated Damages):**
If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).

Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**30. MEDIATION:**
A. The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
B. **ADDITIONAL MEDIATION TERMS: (i)** Exclusions from this mediation agreement are specified in paragraph 31B; **(ii)** The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and **(iii)** Agent's rights and obligations are further specified in paragraph 31D. **These terms apply even if the Arbitration of Disputes paragraph is not initialed.**

**31. ARBITRATION OF DISPUTES:**
A. The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties, OR ☐ _____. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.
B. EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.
C. PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.
D. AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.
E. **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _____ / _____          Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          BK Purchase

**EXHIBIT "3"**

**18462 Villa Dr, Villa Park, CA 92861-2812**

Property Address: ....., ...; ...                                                        Date: Feb  28, 2024

**32. BUYER'S OFFER**

~~A. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C,** the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. Seller has no obligation to respond to an offer made.~~

B. ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

   (1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

   (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

   (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

   (4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____.

C. The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

D. **BUYER SIGNATURE(S):**

(Signature) By, _____   Date: _____   February 28, 2024

   Printed name of BUYER:  Hao Bui

   ☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable, _____

(Signature) By, _____   Date: February 28, 2024

   Printed name of BUYER:  Thuy Nguyen

   ☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable, _____

   ☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

A. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

   **Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.

   ☐ ~~Seller Counter Offer (C.A.R. Form SCO or SMCO)~~

   ☐ ~~Back-Up Offer Addendum (C.A.R. Form BUO)~~

B. ☐ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

   (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

   (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

   (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

   (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____.

C. The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

D. **SELLER SIGNATURE(S):**

(Signature) By, _____   Date: _____

   Printed name of SELLER: _____

   ☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable, _____

(Signature) By, _____   Date: _____

   Printed name of SELLER: _____

   ☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable, _____

   ☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

| OFFER NOT ACCEPTED: _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date) |
|---|
| Seller's Initials |

RPA 12/21 (PAGE 15 OF 16)          Buyer's Initials  **HB** / **TN**    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

# EXHIBIT "3"

Property Address: ....., ...., ....  **18462 Villa Dr, Villa Park, CA 92861-2812**    Date: Feb 28, 2024

---

**REAL ESTATE BROKERS SECTION:**

1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   A. Buyer's Brokerage Firm __Ana Real Estate__ Lic. # __00847066__
      By __Tien Hung Nguyen__ Lic. # __02065064__ Date __Feb 28, 2024__
      By _____ Lic. # _____ Date _____
      ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      **Designated Electronic Delivery Address(es):**
      Email _____ Text # _____
      Alternate: _____
      ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
      Address _____ City _____ State ____ Zip ____

   B. Seller's Brokerage Firm **Berkshire Hathaway HomeServices CA Properties** Lic. # __01317331__
      By **Clarence Yoshikane** Lic. # __00801398__ Date _____
      By _____ Lic. # _____ Date _____
      ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent):**
      Email **J_Toyama@verizon.net** Text # **714.501.7132**
      Alternate: _____
      ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
      Address _____ City _____ State ____ Zip ____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____ , and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** _____ / _____   Seller's Brokerage Firm presented this offer to Seller on _____ (date).
Agent or Seller Initials

---

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RPA 12/21 (PAGE 16 OF 16)**    Buyer's Initials __HB__ / __TN__    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    BK Purchase

**EXHIBIT "3"**

## ADDENDUM TO PURCHASE AGREEMENT

This Addendum to Purchase Agreement (hereinafter called "Agreement") is entered into on February 26____, 2024, by and between__Hao Bui_____, (hereinafter "Buyer") and **Richard A. Marshack, as Chapter 7 Trustee for the Estate of:  Villa Park Mansion LLC 8:23-bk-12204-SC,** (hereinafter called "Seller" or "Trustee") pursuant to the terms and conditions as follows:

## RECITALS

WHEREAS: The Debtor in the bankruptcy proceeding entitled **Villa Park Mansion LLC (**"**Estate**"**),** is the owner of record of certain real property commonly known as: **18642 Villa Drive, Villa Park, CA 92861-2812 (APN: 372-521-31),** (Hereinafter the "Subject Property"), which is now property of the Estate.

WHEREAS: **Villa Park Mansion** ("Debtor") filed a Voluntary Petition under Chapter 7 of Title 11 on **October 25, 2023**, initiating **Case No. 8:23-bk-12204-SC,** in the United States Bankruptcy Court, Central District of California.

WHEREAS: As a result of the Chapter 7 petition, **Richard A. Marshack**, was appointed as the Trustee to administer the assets of the bankruptcy estate, one of which was the Debtor's interest in the Subject Property.

WHEREAS: Pursuant to 11 U.S.C. Section 363, **Richard A. Marshack**, Chapter 7 Trustee and/or his attorneys will seek a Court Order authorizing the sale of the Subject Property.

WHEREAS: Buyers have made an offer on the Property by way of a Purchase Agreement.

WHEREAS: Any sale of the Property is subject to certain terms and conditions imposed by the Bankruptcy Code and ancillary procedures, and any sale requires an Order of the Bankruptcy Court.

**EXHIBIT "3"**

**NOW THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:**

**<u>CONDITIONS OF SALE</u>**

<u>Court Approval</u>: Seller agrees to proceed in good faith to obtain Court approval for the sale of property located at **<u>18642 Villa Drive, Villa Park, CA 92861-2812 (APN: 372-521-31)</u>**, contemplated herein, within reasonable time period after said offer.

1.      <u>Broker's Compensation</u>: Brokers and Agents are entitled to compensation only upon recordation of a deed or other evidence of title.

2.      <u>No Assignment:</u> This agreement is between Buyer and Seller. Buyer shall have no right to assign the Escrow, this agreement, or transfer the Subject Property concurrent with closing without consent of Seller.

3.      <u>Title Insurance</u>: The title insurance policy shall be subject only to liens, encumbrances, clouds and other matters as may appear on the preliminary title report, that are not to be removed at the close of Escrow, and have not been objected to by Buyer. Should Seller be unwilling or unable to eliminate those title matters disapproved by Buyer as above, the Seller may terminate this Agreement or; should Seller fail to deliver good and marketable title as provided above, Seller or Buyer may terminate this Agreement. In either case, the Buyer's deposit shall be returned to Buyer, and Buyer shall have no recourse against Seller, **<u>Richard A. Marshack</u>** as Bankruptcy Trustee, individually, or the **<u>Law Offices of MARSHACK HAYS WOOD LLP</u>, the bankruptcy estate of <u>Villa Park Mansion LLC 8:23-bk-12204-SC</u>**, or the Debtor, or any real estate agent, broker or attorney involved in this transaction including **Clarence Yoshikane of Berkshire Hathaway HomeServices CA Properties.**

4.      <u>Limitations of Sale:</u> The parties acknowledge that the operation of the law has placed the Bankruptcy Trustee in a unique role as the Seller of the Subject Property, which is the subject of this agreement. Due to the nature of the Trustee's role in administering the bankruptcy estate, there are limitations as to the extent, type and character of the agreement under which the Trustee can convey the Subject Property. The Trustee proposes to sell this asset subject to certain limitations. The parties hereby acknowledge that they understand the terms under which this Subject Property is to be conveyed may vary substantially from the normal customs and trade within the real estate industry. Except where expressly mandated by operation of law, the Buyer consents to any such modifications and amendments.

**EXHIBIT "3"**

Purchase without Warranties: Buyers acknowledge that they are purchasing the Subject Property from the Seller "AS IS" without warranties of any kind, expressed or implied, being given by the Seller, concerning the condition of the property or the quality of the title thereto, or any other matters relating to the Property. Buyer represents and warrants that they are purchasing the Subject Property as a result of their own investigations and are not buying the Subject Property pursuant to any representation made by any Broker, Agent, Accountant, Attorney or Employee acting at the direction, or on the behalf of the Seller. Buyers acknowledge that Buyers have inspected the Subject Property, and upon closing of Escrow governed by this Agreement, Buyer forever waives, for himself, his heirs, successors and assigns, any and all claims against the Debtors, their attorneys, agents and employees, the bankruptcy estate of **Villa Park Mansion LLC**, **Richard A. Marshack**, as Bankruptcy Trustee and individually, and his Attorneys, Agents and Employees, arising or which might otherwise arise in the future concerning the Subject Property including **Clarence Yoshikane of the Yoshikane-Toyama Real Estate Group at Berkshire Hathaway HomeServices California Properties.**

5.    Trustee's Liability: Buyer acknowledges that the Trustee is acting in his official capacity only. No personal liability shall be sought or enforced against the Trustee with regard to this Agreement, including the Addendum, the assets, the sale of the Subject Property, or the physical condition of the Subject Property. In the event that the Trustee fails or refuses to complete the transaction for any reason, then the limit of the Trustee's liability is only to return any money paid to the Trustee by the Buyer, without deduction. Prior to and after the closing of escrow, the United States Bankruptcy Court shall have and retain the sole and exclusive jurisdiction over the Assets of this transaction and Agreement; and all disputes arising before and after closing shall be resolved in said Court.

6.    Hold Harmless:

Buyer understands the terms and conditions of the entire purchase contract and holds the estate, realtors, brokers, agents, **Richard A. Marshack**, and The **Law Offices of MARSHACK HAYS WOOD LLP**, his attorneys, agents and employees harmless from any liabilities arising from this contract

**EXHIBIT "3"**

7.    Any and all disputes, which involve in any manner the Bankruptcy Estate or **Richard A. Marshack**, realtors, brokers, agents, arising from this Purchase Contract, this Addendum or relating in any manner to the Subject Property, shall be resolved only in the United States Bankruptcy Court, Central District of California, Santa Ana Division.

**10.    Seller will not provide a pest control report nor pay for any corrective work; nor shall Buyer receive any credit for corrective work.**

**11.    Buyer is aware that this offer is contingent upon Chapter 7 Bankruptcy Trustee approval, Bankruptcy Court confirmation & overbid procedures.**

**12.    Buyer has NO CONTINGENCIES in this transaction; including but not limited to the contingency of obtaining financing & appraisal, inspections, etc.**

**13.    Deposit is refundable only if Bankruptcy Court accepts overbid.**

   **Deposit**:

   **(a)    The Deposit will be applied to the Purchase Price. Said Deposit will be fully refundable if the Bankruptcy Court accepts an overbid or if the Court does not approve this sale. Should the Buyer default and fail to perform his obligations and timely close escrow, the Deposit shall become nonrefundable and shall be forfeited by the Buyer and retained by Seller as liquidated damages in the event of default by Buyer.**

   **(b)    Upon approval by the Court of a Winning Bidder, the Deposit of such Winning Bidder shall become non-refundable if the Purchase Agreement of such Winning Bidder is thereafter terminated by the Trustee as a result of a breach by the Winning Bidder of its obligations thereunder. The Deposit of a Back-Up Bidder shall remain on deposit with the Trustee, pending the closing date, and such deposit shall become non-refundable if the Back-Up Bidder becomes the Winning Bidder and its Overbid Purchase Agreement is thereafter terminated by the Trustee as a result of a breach by such Back-Up Bidder. In either case, the forfeiture of the Deposit shall constitute liquidated damages and the Debtor, the Trustee, and the bankruptcy estate shall retain no other rights, remedies, claims, counterclaims and defenses against the Buyer, Back-Up Bidder or such other Qualified Bidder, as applicable.**

**EXHIBIT "3"**

14.   In addition to the **$110,000 deposit**, Buyer will deposit the additional sum of $ _____3,300,000_____ **(Balance of purchase price)** into escrow on or before the close of escrow.

**I, the Buyer herein, have reviewed the foregoing Agreement and understand the terms and conditions set forth herein, and further agree to purchase the Subject Property pursuant to said terms and conditions.**

**Date:**   February 26, 2024

_____
Hao Bui                                         **, Buyer**

**Date:**   February 26, 2024

_____
Thuy Nguyen                              **, Buyer**

**EXHIBIT "3"**

**I, Seller, agree to sell the Subject Property pursuant to the terms and conditions set forth herein.**

**Date:**

_____

<mark>Richard A. Marshack</mark>**, in his sole capacity as Bankruptcy Trustee for the Estate of** <u>Villa Park</u> <u>Mansion LLC 8:23-bk-12204-SC</u> **and not in his individual capacity or as a member of the** <u>Law Offices</u> <u>of MARSHACK HAYS WOOD LLP</u>

**SO AGREED.**

**Date:**

_____

**Clarence Yoshikane, Trustee's Agent**
**CA BRE License # 00801398**

**714.606.5765, Direct Line**

**Clarence.Yoshikane@gmail.com**

**Date:**  Feb 28, 2024

_____

Tien Hung Nguyen               **, Buyer's Agent**

CA BRE License # 02065064

**EXHIBIT "3"**





**ADDENDUM No.** _One_

**(C.A.R. Form ADM, Revised 12/21)**

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,
dated _____ , on property known as _____
("Property/Premises"),
in which    **18462 Villa Dr, Villa Park, CA 92861-2812** and _____ is referred to as ("Buyer/Tenant")
and    **Richard A. Marshack, Ch 7 Trustee            ...** is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

*Minimum Initial Overbid to be at Least $10,000 with Subsequent Overbids to be $5,000 or an Amount Acceptable to the*
*Trustee. Overbidder to match all terms and conditions of original bid. If a successful Overbidder is accepted and confirmed*
*by the Court, then the successful Overbidder is to reimburse the Original Bidder up to: $7,500 costs incurred. Only Physical*
*Inspection, Termite Inspection, and Loan Appraisal are Reimbursable Expenses. Aforementioned Costs incurred to be*
*collected by Escrow. Proof of monies spent to be given to Overbidder along with Inspection Reports.*

*Buyer Acknowledges that the Trustee is a Fiduciary and is Obligated to obtain the best transaction for the estate. Trustee*
*may Terminate this Agreement if he has a better transaction. If a motion to sell has been filed the Trustee may recommend*
*acceptance of another offer. Buyer Acknowledges that Trustee is signing this agreement so the Buyer can start the process*
*to obtain Loan Approval. So the Buyer is prepared to Bid in the Event there is an Auction. Buyer Acknowledges that the*
*Trustee may Terminate this agreement and accept another offer if it is a better offer.*

*Conditional Acceptance for the Sole Purpose of Securing Financing to Aid Buyer to Qualify for Bidding.*

In addition to Bankruptcy Court approval, and other items as stated in the Agreement, the sale of the Property is specifically subject to,
and conditioned upon, the Seller reaching resolutions with the secured creditors on the Property for carve-outs or otherwise to assure an
adequate recovery to the Estate from the sale.
HB/TN

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant _____    Date    February 26, 2024
Hao Bui

Buyer/Tenant _____    Date    February 26, 2024
Thuy Nguyen

Seller/Landlord _____    Date _____
Richard A. Marshack, Ch 7 Trustee
...

Seller/Landlord _____    Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 12/21 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**